## No. 11,205.

### MATHILDE McLEAN VS. JULES JANIN.

Domicil is acquired by the combination of residence and the intention to reside in a certain locality.

If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicil.

If the wife wilfully and maliciously decline to accompany her husband to a new home without any just or reasonable cause, it is an act of desertion on her part.

If, on the other hand, the husband leaves his home and his wife and children, and goes elsewhere, abandons them, without making the least attempt to aid in enabling them to join him, he may be summoned to answer to an action based on abandonment of the wife by the husband.

APPEAL from the Tenth District Court, Parish of Natchitoches. *Andrews, J.*

*Cunningham & Tucker* for Plaintiff and Appellee.

*Chaplin, Breazeale & Chaplin* for Defendant and Appellant.

The opinion of the court was delivered by

BREAUX, J. This is an action for a separation from bed and board, on the ground of abandonment of the wife by the husband.

The required summonses were served upon the defendant to return to the alleged place of domicil in New Orleans.

Before answering to the merits of the cause the defendant interposed an exception of no cause of action, which was overruled.

In his answer he alleges that his domicil is in the parish of Natchitoches; that his wife left his house without cause; that he is anxious to welcome her return to his house, and, accord her protection.

The facts are that plaintiff and defendant married in New Orleans in October, 1881.

That they lived apart from August, 1882, until 1889, when they became reconciled to each other and established their home at defendant's mother, in the town of Natchitoches.

In 1890 plaintiff, with the approval of her husband, came to New Orleans, in which city her mother resides, and received her mother's care at the birth of her child, which occurred in December, 1890.

The defendant also came to this city, and remained from November 26 of that year until Christmas.

He returned the February following, and remained about two weeks with his wife and children at the residence of his mother-in-law.

While on these visits the matter of a change of residence was discussed, and plaintiff's witnesses testify that the defendant agreed to leave Natchitoches and stay at plaintiff's mother until it became possible for him to establish a home of his own in New Orleans.

The witnesses are the mother, two brothers, the sister-in-law of plaintiff and an intimate friend of their family.

The declarations of the parties to the suit were objected to on the ground that, under Act 59 of 1888, amending Art. 2281 of the Civil

Code, no statement of either party in suit for separation from bed and board or divorce shall be received in evidence.

The mother of the defendant testifies that his wife joined him in Natchitoches in 1889 and remained with him, except occasional visits by plaintiff to her mother in New Orleans, until December, 1890, at which time she returned to her mother's residence; that she would welcome her to her residence; that she does not know whether her son, the defendant, wishes her to reside at her house or not.

Judgment was pronounced for plaintiff, from which the defendant appeals.

The exception and the objections of the defendant to the testimony will be considered with the merits.

To sustain the action it devolved upon plaintiff to establish that her husband changed his domicil from Natchitoches to New Orleans; and in the second place, that she was willing to follow him to any other domicil.

In reference to the facts, after eliminating from consideration mere declarations of the husband or the wife and all testimony of witnesses heard to prove them, we think it is manifest that the defendant intended when he was in this city in December, 1890, and February, 1891, to establish himself here permanently. In carrying out that intention he allowed his family to remain at his mother-in-law's house and consented to its becoming their home. While there the question of their support and his own was considered and his determination in that regard made known. He shipped his furniture to the dwelling place of his family.

He sought employment here.

In his letters and telegrams to plaintiff, a short time after leaving New Orleans, he expressed an intention to return.

At no time prior to the institution of the suit was intimation given to his family to follow him.

The expenses for support were not furnished, and no amount whatever was sent to his family.

A change of domicil is effected from one place to another by the abandonment of the first place of residence with intention to remain absent, and by selecting and occupying a home in a new locality with purpose of staying.

It is proven that the defendant had left the first place of residence.

With reference to the second proposition, that the wife must fol-
low her husband, it is not entirely independent of all attempt on the
part of the husband to provide a home or a stopping place of some
kind.

The records do not disclose that the defendant had any house at
all in the parish of Natchitoches after his return to the parish, though
he alleges that he is "ready, willing and anxious to welcome her
return to his house."

The willingness testified to by defendant's mother to receive his
wife and children was independent of all consent on his part.

It was not shown that plaintiff was ever made aware of the kindly
disposition of her mother-in-law in that respect.

It did not devolve upon the wife to find a place to stay at defend-
ant's domicil.

The jurisprudence of France, in obedience to its code upon the
subject, is exacting in reference to the duty of the wife.

It is clearly laid down that the intimacy of the marriage relations
and the welfare of the family must be maintained by requiring that
the wife shall have the same residence as the husband.

Under those laws, as inflexible as they are in regard to the wife's
duty to follow her husband, he is not relieved from all responsibility
in fixing and establishing the conjugal domicil.

The Articles 39 and 120 of the Louisiana Code were copied from
the Code Napoleon (being 108 and 214 of that code). In reference to
the latter Baudry Lacantinerie, Vol. 1, p. 169, says:

" The *residence* of the husband is imposed upon the wife by Art.
214. The article last referred to (108) imposes that her domicil
shall be the same.

" Marriage establishes between man and wife the most intimate
relations that it is possible to conceive (*erunt duo in carne una*). It
is natural that they should have the same residence and the same
domicil, and since under other articles the husband is invested with
the marital authority and he is the head of the community, the law
quite naturally left to him the selection of the residence and the
domicil. The wife must therefore reside wherever her husband will
judge proper to establish the residence, and she will be domiciled
wherever it pleases her husband to fix the domicil."

The place of residence was selected by the defendant, where, in
obedience to his will, she remained.

No attempt was made by him subsequently to change it, or to return to the conjugal domicil he had fixed.

From another French authority we quote:

"From the fact that the domicil of the wife is inseparable from that of the husband, jurisprudence concludes that the domicil acknowledged by the husband as being that of the wife must be considered as the legal domicil of the husband.

"At least the latter is not allowed to object to judicial notification at the instance of the wife from that domicil." Fugier Herman, Vol. 2, p. 168, No. 16.

We are concerned at this time with the question of abandonment. The matter of a house or of the wife's support is not an issue. It is a question of uninterrupted abandonment.

The defendant did nothing to show an intention to bring about a change—to cause the abandonment to cease, either prior or subsequent to the service of the summonses served upon him to return to the residence and domicil of his selection.

He may have had the right to decline to return, but the obligation of the husband to the wife and children required notification of some kind that they were expected to join him at the new domicil in Natchitoches, or some other, at least, equivalent act showing a desire to put an end to the abandonment.

The records do not disclose the least intimation of a desire to receive them.

"The true meaning of this aphorism, touching the domicil of the wife being that of her husband, is that the domicil of the wife is the domicil the husband has at his marriage, or provides after marriage for himself and his wife, and which, though he may change at pleasure, must be one to which the wife is taken or invited, or at least of which she knows, and to which she may go and stay at her will." Champen vs. Champen, 40. An. 39.

The suit at his domicil on the ground of abandonment at another prior domicil was properly maintained.

The judgment is therefore affirmed at appellant's costs.

Rehearing refused.