The opinion of the court was delivered by
McEnery, J.
Under an indictment for the murder of L. S. Ohovose, who was killed by defendant in a difficulty with other parties, the defendant was convicted of manslaughter. He appealed.
The first point made by defendant is, that the State can not discredit its own witness.
A State witness, when cross-examined by the defendant, stated “ that his brother had a pistol and handed it to him during the difficulty.” On re-examination the District Attorney asked the witness if he had testified on the former trial “ that his brother had a pistol and handed it to him during the difficulty.”
The prosecution contends that the State was taken by surprise by the answer of the witness to the cross-interrogatories, and “ it had the right to contradict him and to destroy the testimony of the witness.”
This last statement in quotation marks is found in the brief of the District Attorney, and is too broad and can not be sustained. Apart from statutory regulations, such evidence is not admissible. 56 New York, 385; 29 Cal. 384; State vs. Schonhausen, 26 An. 421; State vs. Thomas, 28 An. 827.
*1576 The record shows that the trial judge permitted the question to be answered, for the sole purpose of discrediting the witness. On this point the record discloses the following statement by the judge: “ As to the question asked W. A. Pearce, the State claimed surprise at the testimony of Peace, and the court believed the claim of surprise well founded; * * * as to the question asked Robert Pearce, the court did not understand that the only object of the question was to impeach and discredit the witness, although it was admissible for that purpose on the same ground of surprise at his testimony about the pistol, although he was not sworn at the former trial.”
Prom the bills, we understand that the testimony of both witnesses, W. A. Pearce and Robert Pearce,, was to a fact not disclosed on the former trial, and at the Coroner’s inquest. W. A. Pearce was a witness at the inquest and on the trial; Robert Pearce did not testify on either of these occasions. With reference to the question propounded to the first witness, its object was to discredit his testimony.
It is a general rule that a party can not impeach the testimony of his own witness. 26 An. 421; 28 An. 827.
The exception is that he is sometimes permitted, in cases of hardship, when the testimony of the witness is unexpectedly unfavorable, to contradict him by other evidence to the issue in the case. 1 Stark Ev. 147; 1 Greenleaf Ev., pars. 442, 443; 3d Rice on Evidence, p. 373; State vs. Simon, 37 An. 569.
And where a party is bona fide surprised at the unexpected testimony of his witness he may be permitted to interrogate as to previous declarations made by him inconsistent with his testimony, the object being to prove the witness’ recollection and to lead him, if mistaken, to revise what he has said. 1 Wharton’s Evidence, par. 549; 3 Rice’s Evidence, par. 237.
But this proceeding is quite different from impeaching his credibility directly for the sole purpose of destroying, as claimed by the prosecution, his whole testimony. Generally, where proof is to be offered that a witness has said or done something inconsistent with his .testimony, a foundation must be first laid and an opportunity for explanation offered by asking the. witness whether he has not said or done what it is proposed to prove, specifying the particulars of tim'e, place and person. 1 Greenleaf’s Evidence, 463; 16 How. 38; 76 Penn. 83.
*1577 The same course is pursued when allowed by statute with a witness, on his examination in chief, if the judge is of the opinion that he is hostile to the party by whom he was called. If the sole effect is to discredit the witness, apart from statutory regulations, such evidence is not admissible. But if the purpose be to show the witness in error it is admissible. Bullard vs. Pearsall, 53 N. Y. 230.
In the ease just cited we think the law is correctly stated as follows: “This course of examination may result in satisfying the witness that he has fallen into error and that his original statements were correct, and it is calculated to elicit the truth. It is also proper for the purpose of showing the circumstances which induced the. party to call him. Though the answer of the witness may involve him in contradictions calculated to impair his credibility, that is not a sufficient reason for excluding the inquiry. Proof by other witnesses that his statements are incorrect would have the same effect, yet the admissibility of such proof can not be questioned. It is only evidence offered for the purpose of impeaching the credibility of the witness, which is inadmissible when offered by the party calling him. Inquiries calculated to elicit the facts, or to show to the witness that he is mistaken and to induce him to correct his evidence, should not be excluded simply because they may result unfavorably to his credibility.”
The witness, W. A. Pearce, was a State witness, and on two occasions failed to state that his brother had handed him a pistol. On the second trial the fact as stated by him was disclosed on cross-examination by defendant’s counsel. It was a statement unfavorable to the prosecution and we infer from the briefs material and important to the defendant in' his plea of self-defence. The witness’ testimony was inconsistent with his prior testimony, in which he suppressed, if the statement be true, an important and material fact. In reference to inconsistent statements, Mr. Rice, in his work on Evidence, Vol. 3, paragraph 236, says: “The party producing a witness is not allowed to impeach his credit by evidence of bad reputation, except when he is compelled to produce him by rea-on of the nature of .the evidence sought, but he may contradict him by other-evidence, and he may also ask him whether he has not made at other times, statements inconsistent with his •present testimony. Under all rules of reason he is not allowed to contradict his witness upon any particular or material fact.” This *1578 has reference to the material fact as bearing on the credibility of the witness. The law is thus stated by Greenleaf: “ You may cross-examine your own witness if he testify contrary to what you had a right to expect as to what he had stated in regard to the matter on former occasions, either in court or otherwise, and thus refresh the memory of the witness and give him full opportunity to set the matter right if he will; and, at all events, to set yourself right before the jury. But you can not do this for the mere purpose of discrediting the witness, nor can you be allowed to prove the contradictory statements of the witness upon other occasions, but must be restricted to proving the facts otherwise by other evidence.”
And in the case of Coulter vs. American Merchants United Express Co., 56 N. Y. 585, it was held that a party may contradict his own witness as to a fact material to the case, although the effect of the proof may be to discredit him, but he can not impeach him, although subsequently called as a witness for the adverse party, either by general evidence, or by proof of contradictory statements out of court.”
The witness was presented by the prosecution as worthy of credit, and he could not be impeached, either by general evidence or by proof of contradictory statements, in or out of court. He could have been contradicted as to a fact material to the case, although the effect of the proof may have discredited him, but the party calling him could not have adduced such contradiction when it is only material, as it bore upon his credibility. In the instant case the prosecution might have shown by other testimony that no pistol was handed to the witness by his brother, but he was not at liberty to prove that on a former trial the witness had omitted this fact from his testimony, as the fact of the omission went direct to the witness’ credibility. The prosecution, although taken by surprise, so far as the witness was concerned, was limited to the interrogation heretofore alluded to, and the giving the witness the opportunity of explaining the inconsistency in his testimony.
The question was asked the witness Robert Pearce, sworn on behalf of the prosecution by the District Attorney, if he had not gone to Texas a short time prior to the last term of court, how much money he had, and from whom he obtained it. The question was allowed to be answered. Although the answer of the witness dissipated, to some extent at least, the effect which the question intend *1579 ed to produce, yet it was improper: Its sole purpose was to discredit the witness, as it was irrevelant and could have no effect.
For the reasons stated, in reviewing the questions asked the witness W. A. Pearce, this evidence was equally inadmissible.
The trial judge refused to permit certain threats of the Pearces to go to the jury. His reasons, appended to the bill, are sufficient to justify his ruling. He says: “ The above statement of the evidence on the trial only purports to be a part of the testimony, and is, in' fact, only a part of it, except the testimony of Robert Pearce, which was written down in full. The prisoner’s testimony is quoted substantially fight, except that he said that the gun might have fired accidentally, or something to that effect. W. A. Hick’s testimony should be thatW. A. Pearce replied to Vickers’ denial, ‘ Well, if you did, I wanted to be ready, or wanted you to let me know, so that I could be ready,’ or that he was ready, or words to that effect.
The evidence showed that the difficulty arose between Vickers and W. A. Pearce in the presence of Robert Pearce, and that his name was not mentioned, and that the alleged conspiracy between old man Pearce and Robert occurred after W. A. Pearce had left the house that morning, and that W. A. Pearce was unarmed and said nothing about it if it existed, and that the old man Pearce did not arrive on the scene until after all was over and the parties had scattered.- Under these circumstances I did not see how the-threats made by old man Pearce were admissible in justification of the shooting at W. A. Pearce, his son, when the old man was not present.”
We need add nothing to this statement, as it shows that if any threats were made, they were the threats of old man Pearce, who was not engaged in the difficulty, and that if there was a conspiracy among them' to take the life of Vickers no threats had been communicated to him. Even communicated threats will not justify an assault upon another unless the party making them attempts to carry them into execution by a hostile demonstration.
A motion for a new trial was filed and overruled. It embodies the matter reserved in the bills of exception, and further alleges thát the judge had not charged the jury as to the legal effect of the accidental discharge of the prisoner’s gun, and that one of the-jurors who tried the case was disqualified, as he had formed and ex-pressed an opinion as to the guilt of the defendant prior to the trial¿ *1580 As to the accidental discharge of the gun and its legal effect, no instructions were asked for on this point, although the written charge of the judge had been submitted to the attorneys of the defendant.
It is unnecessary to pass upon the question raised as to the qualification of the juror or the exception of the judge’s refusal to give the special charge as to a reasonable doubt.
The judgment appealed from is annulled, avoided and reversed, and it is now ordered that this case be remanded to be proceeded with according to law.