For reasons assigned, the verdict and judgment are affirmed.

---

(35 South. 505.)

No. 14,943.

STATE v. WILLIAMS et al.

(Nov. 30, 1903.)

CRIMINAL LAW—EXAMINATION OF WITNESS—EVIDENCE—DISTINCT CRIME—WITNESS—CREDIBILITY—COMPETENCY.

1. It is well settled that, where a party is surprised by the unexpected testimony of his witness, he may be permitted to interrogate as to previous declarations inconsistent with the testimony given; the object being to test the recollection of the witness, and lead him, if mistaken, to review what he has said.

2. Where, upon the cross-examination of a state witness, the defense elicits new matter prejudicial to the prosecution, the witness may be fully interrogated thereon upon redirect examination.

3. Whilst, as a general rule, a distinct crime, unconnected with the one charged in the indictment, cannot be given in evidence, exceptions to that rule arise when it becomes necessary to rebut the possible inference of accident, or to prove the intent with which the act charged was committed.

4. Where two witnesses are testifying with regard to the same facts, it is the province of the jury, and not of the witnesses respectively, to determine as to which is testifying truthfully.

5. Act No. 29, p. 39, of 1886, is the law of this state by which the competency of witnesses in criminal prosecutions is to be determined. It imposes no disqualification on account of lack of information concerning or faith in the existence of a Supreme Being or a future state of rewards and punishments, and no disqualification outside the statute can be recognized by the courts.

(Syllabus by the Court.)

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; Edward Taylor Lewis, Judge.

Resie Williams and Lee Williams were convicted of manslaughter. From the judgment, Resie Williams appeals. Affirmed.

L. Austin Fontenot and John W. Lewis, for appellant. Walter Guion, Atty. Gen., and R. Lee Garland, Dist. Atty. (Lewis Guion, of counsel), for the State.

MONROE, J. Resie Williams and Lee Williams having been indicted for murder and convicted of manslaughter, Lee Williams was granted a new trial, and Resie Williams was sentenced to imprisonment at hard labor. From this sentence she has appealed, and presents her case to this court by means of certain bills of exception, viz.:

Bill No. 1, to the ruling of the trial judge in permitting the prosecuting attorney to ask Millie Slater, a witness for the state, whether she had not, before the coroner's jury, made a statement at variance with the testimony which she had just given on the trial.

The trial judge gives the following reason for his ruling, to wit:

"The above question was permitted because when a party puts a witness on the stand and is surprised by the answers of the witness, he or she may be asked if he" (or she) "has not made statements at variance with his" (or her) "present statements."

It is well settled that, where a party is bona fide surprised at the unexpected testimony of his witness, he may be permitted to interrogate as to previous declarations inconsistent with the testimony given, the object being to test the witness' recollection, and lead him, if mistaken, to review what he has said. State v. Vickers, 47 La. Ann. 1576, 18 South. 639, and authorities there cited.

Bill No. 2, to the ruling of the court in permitting the prosecuting attorney to ask Millie Slater, a witness for the state, "Didn't you see a burnt place on the little boy's ear?" (meaning Albert Miller, who resided with the defendants), which question was asked for the purpose of showing acts of cruelty, such as terminated in the death of the deceased, to the said Albert Miller, and which question was objected to on the ground "that it was

irrelevant, and was an attempt to prove an offense disconnected with the litigated act." The judge states that he overruled the objection because the defendants, in their cross-examination of the witness, who was a sister of the accused, Resie Williams, elicited from her testimony to the effect that her sister's treatment of the children under her charge, of whom the deceased was one, was kind and humane, and that she never knew her to ill-treat them.

The defense having, upon the cross-examination, elicited new matter prejudicial to the prosecution, it was competent for the state upon redirect examination to interrogate the witness fully concerning the same. Enc. Pl. & Pr. vol. 8, p. 125.

Bill No. 3, to the ruling of the court in permitting the prosecuting officer to ask, upon cross-examination of a witness for the defense, "Did you not see marks, bruises, or burns on the little fellow's ear?" (meaning the boy Albert Miller), the purpose of the question and the objection being the same as stated above, and the reason given by the judge for his ruling being that the "defendants, in their examination of the witness in chief, elicited from her that the defendant's treatment of the children under her charge was kind and humane, and that she had never seen the defendants maltreat these children. These questions," says the judge a quo, "were permissible to test the credibility of the witness."

The ground stated sufficiently sustains the ruling as made. Beyond, this, however, whilst, as a general rule, a distinct crime, unconnected with the one charged in the indictment, cannot be given in evidence, exceptions to this rule arise when it becomes necessary to rebut the possible inference of accident, or to prove the intent with which the act charged was committed. A. & E. Ency. of Law, vol. 11, p. 513; State v. Patza, 3 La. Ann. 513; State v. Rohfrischt, 12 La. Ann. 382; State v. Mulholland, 16 La. Ann. 377; State v. Thomas, 30 La. Ann. 600; State v. Porter, 45 La. Ann. 664, 12 South. 832.

Bill No. 4, to the ruling of the judge in excluding the question, propounded by the counsel for the defense to Albert Miller, a witness for the prosecution, "If Kutch, your brother, who says you and he came into the room together, testifies that Resie was sitting down on the girl, bumping her head on the floor, he is mistaken?" on the ground, as stated by the judge, that "the witness can be asked to detail facts as they were observed by him, and it is the duty of the jury to determine which of the witnesses testifying before them is mistaken. To permit this witness to decide this issue of fact is to rob the jury of its province. It is the duty of the jury to reconcile the testimony of witnesses." The ruling complained of was obviously correct.

Bill No. 5, to the ruling of the court in admitting the testimony of Kutch Miller, a witness for the prosecution, over the objection that he was incompetent, being only eight years of age. For the ruling thus complained of the judge assigns the following reasons, viz.: "That, in the exercise of the discretion vested in the judge a quo, I was of the opinion that the witness was competent, and that the jury could give such weight to his testimony as they saw fit; in other words, I permitted the witness to testify because it was necessary in the interest of public justice."

There are annexed to and made part of this bill the following questions and answers, propounded to and given by the witness on his voir dire:

"Q. How old are you? A. I don't know. Q. What parish do you live in? A. Iota. Q. What will become of you if you tell an untruth? A. They will put me in jail. Q. Anything else happen to you? A. They will hang me. Q. Did you ever say any prayers? A. No. Q. Has anybody ever taught you to say your prayers? A. No. Q. Have you ever been to church or Sunday school? A. No. Q. Has anybody ever taught you about God or heaven? A. No. Q. Do you know what an oath is? A. No. Q. When the clerk made you hold up your hand just now, what did you tell him you would do? A. Tell the truth. Q. You are a little colored boy? A. Yes. By the Court: Q. Do you believe that you will be punished if you tell what is not so? A. Yes. Q. Who do you believe will punish you? A. The sheriff. Q. Do you believe God will punish you? A. Yes. Q. Do you understand, then, that by putting you on the stand that you are to tell

the truth, and nothing but the truth, and that you will be punished if you don't tell the truth? A. Yes."

Under Act No. 29, p. 39, of 1886, which (so far as it need be here quoted) reads, "That the competent witness in all criminal matters shall be a person of proper understanding," it has been held that persons who have been convicted of infamous crimes, and have served out the sentences imposed therefor, are competent witnesses, provided they meet the requirements of the statute in the matter of understanding. State v. Mack, 41 La. Ann. 1082, 6 South. 808; State v. McManus, 42 La. Ann. 1194, 8 South. 305.

In the last-cited of these cases the defendant was being tried for perjury, and, having offered himself as a witness in his own behalf, the objection was made that he had previously been convicted of an infamous crime, and had suffered imprisonment at hard labor therefor, and hence was incompetent. This court, however, quoting from the case first cited, said: "The objection to the competency of a witness on the ground that he has been convicted and sentenced for grand larceny has no force since Act No. 29 of 1886, which provides that 'the competent witness in all criminal matters shall be a person of proper understanding,' with certain exceptions not germane to this point. This is the first statute passed on this subject in this state. Prior thereto the case was governed by the rules of the English common law as existing in 1805, which excluded convicted and sentenced felons. * * * But since the matter has been regulated by statute no disqualification can be recognized outside thereof." (Italics by the present writer.)

If, then, a person having sufficient understanding to be able to tell what he has seen, heard, or felt, but who has spent the greater part of his life in prison under repeated sentences for false swearing, is nevertheless a competent witness, because, under the statute, his competency depends upon his understanding, and is not affected by his ignorance of or contempt for the Ninth Commandment, why should not a person who can meet the requirement of the statute in the matter of intelligence, who has never been convicted of any crime, and who is not shown to have acquired the habit of lying, be equally competent? If, in the one case, the credibility of

the witness, as affected by his sense of moral responsibility, is to be left to the jury, why should it not be so left in the other case? And, finally, if the statute which we have quoted, and which regulates the matter, abrogates the common-law rule which holds that convicted and sentenced felons are incompetent witnesses, why does it not abrogate the common-law rule which presupposes religious instruction and belief in future punishment? This court, as we have seen, has twice answered these questions by deciding that under the statute a competent witness in a criminal case is a person of proper understanding, and that no disqualification outside of the statute can be recognized.

And so, either as a result of constitutional or statutory enactments or otherwise, in California, Colorado, Connecticut, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New York, Oregon, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin, the rule seems to be that no person shall be held incompetent to testify as a witness in consequence of his opinion on the subject of religion or his belief or disbelief in the existence of a Supreme Being or a future state of rewards and punishments. In some of the states mentioned the law forbids the interrogation of a witness on the subject, and in others atheism and agnosticism are allowed to be considered as affecting the credibility of the witness. See State v. Washington, 42 L. R. A. 553, note.

In Louisiana, so far as we are informed, save in the case thus reported and annotated, it has never been held that a witness was incompetent to testify on account of his religious belief or disbelief. On the contrary, the doctrine recognized by this court even before the passage of the act of 1886 seems to have been, as thus stated, to wit: "The criminal law has not determined at what age a witness is incompetent. The competency depends upon his intelligence, reason, capacity, and understanding," etc. State v. Ross, 18 La. Ann. 342, affirmed in State v. Denis, 19 La. Ann. 121.

"It is not a fact that no child of six years of age can understand the nature of an oath. Greenleaf on Evidence, vol. 1, § 367, says: 'On the other hand, it is not unusual to re-

ceive the testimony of children under nine, and sometimes even under seven, years of age, if they appear to be of sufficient under-standing, and it has been admitted even at the age of five.' See, also, Roscoe's Cr. Ev. 94. Under the age of fourteen a child will not be presumed to have sufficient under-standing to be a witness, and his admission or rejection must depend upon the sound dis-cretion of the judge." State v. Richie, 28 La. Ann. 327, 26 Am. Rep. 100.

In State v. Wilson, 109 La. 74, 33 South. 85, it was held that "a child under three, or even four, years should not be sworn and examined as a witness and its testimony re-ceived, unless it is made evident that it has some sense of the obligation of an oath."

But it was said in the course of the opin-ion:

"The testimony of an intelligent child may be admitted. The admissibility of the testi-mony depends upon its intelligence."

From the record in this case it appears that the accused had in some way obtained the custody of small children, and that she was charged with so maltreating one of them that it died. Whether the witness Kutch Miller was another does not appear, but it might very well happen in such a case that the only witnesses who could be procured on behalf of the state would be those children who sur-vived, and to exclude their evidence only be-cause the accused had failed to "send them to church or Sunday school" or to "teach them about God or heaven" would amount to a travesty of justice. The judge a quo was of opinion that the witness offered was suffi-ciently intelligent to be heard. We are not prepared to say that he erred or abused the discretion with which he is vested, and the ruling in State v. Washington, 49 La. Ann. 1602, 22 South. 841, 42 L. R. A. 553, to the effect that "the belief in God and the sense of accountability to him for false swearing is indispensable to the competency of a wit-ness" must yield to the view, expressed in the other decisions of this court, that Act No. 29, p. 39, of 1886, is the law of this state by which the competency of witnesses in crim-inal prosecutions is to be determined, and that no disqualification outside of that act can be recognized.

The verdict and sentence appealed from are therefore affirmed.