[No. 16032.   Department Two.   December 22, 1920.]

THE STATE OF WASHINGTON, *Respondent*, v. VERNE
SILLS, *Appellant*.[1]

WITNESSES (115-1)—IMPEACHMENT — INCONSISTENT STATEMENTS—
INTERROGATION OF OWN WITNESSES FOR EXPLANATION—SURPRISE.  The
state may interrogate its own witness in respect to previous state-
ments inconsistent with his testimony in order to refresh his mem-
ory and give him an opportunity to explain the inconsistency,
especially if misled or surprised.

INTOXICATING LIQUORS (30, 50)—OFFENSES—ILLEGAL POSSESSION
AND SALE—EVIDENCE—SUFFICIENCY.  A conviction of bootlegging is
sustained by ·evidence that the accused sold and delivered whiskey
to a witness who first testified that accused directed him to where
the liquor was hidden, and by evidence of another witness who pur-
chased and paid accused for liquor which he found at a place to
which accused directed him.

Appeal from a judgment of the superior court for
Snohomish county, Alston, J., entered December 6,
1919, upon a trial and conviction of bootlegging.
Affirmed.

*E. C. Dailey* and *A. E. Dailey,* for appellant.

*Thos. A. Stiger* and *Q. A. Kaune,* for respondent.

HOLCOMB, C. J.—This appeal is prosecuted from
judgment on a verdict under an information charging
·that: ·

"He, the said Verne Sills, in the County of Snoho-
mish, State of Washington, on or about the 6th day
of September, 1919, then and there being, did then and
there unlawfully have in his possession and carry
about with him, intoxicating liquor, to-wit: moonshine
whiskey, which said intoxicating liquor was so held,
kept and carried about with and by the said Verne
Sills for the purpose and with the intent of making and
effecting the unlawful sale of the same. . . ."

[1]Reported in 194 Pac. 580.

From the evidence, it appears that appellant sold a quart of intoxicating liquor, or moonshine whiskey, to each of two persons, in a public alley, in Arlington, on the night of September 6, 1919. On direct examination, one Husby, a witness for the state, testified that on the date named he paid to appellant ten dollars; that he (Husby) withdrew the liquor from under a sidewalk near by, the place to which appellant had directed him to look for it. One Rankin, another witness for the state, testified, on direct examination, that he paid to appellant ten dollars on the night in question, and that he was told by appellant to look under a box in a woodshed about twenty feet distant from where the men then were. At this stage of the examination, the deputy prosecuting attorney handed to witness Rankin a statement, or affidavit, which the witness then acknowledged he had that day signed. He answered in the affirmative, the interrogation whether it was true, and was then asked whether, having examined it, he desired to change the oral testimony he had just given as to the manner of the delivery of the whiskey. He replied in the negative. The deputy prosecuting attorney then inquired:

"Well, then, why did you say in this statement: 'Sills returned carrying with him a quart bottle filled with moonshine whiskey?' "

Objection was interposed to the reading of the statement. Thereupon it was offered in evidence, to which objection was also made. The jury were then excused, and the prosecuting attorney read from the statement of the witness to the effect that appellant had actually brought and delivered the whiskey to witness Rankin at the time charged. Upon being questioned by the court as to whether that was true, Rankin admitted that it was, and, upon being reminded that the state-

ment and his testimony conflicted, his explanation was, "Well, I kind of forgot." The jury were then recalled, and the witness testified that appellant had made actual delivery of the liquor to him.

Appellant insists that the evidence was insufficient to support the verdict and also that prejudicial error was committed in permitting the state to impeach its own witness (Rankin).

Assuming, but not deciding, that a party can never impeach his own witness, and that he cannot prove the contradictory statements of his own witness to discredit him, a party may, as was done in this case, interrogate the witness in respect to previous statements inconsistent with the present testimony, for the purpose of probing the recollection of the witness, show the witness that he is mistaken, and give him an opportunity to explain the apparent inconsistency, especially where the party is surprised or deceived by the testimony. *McDaniel v. State,* 53 Ga. 253; *Hemingway v. Garth,* 51 Ala. 530; *Griffith v. State,* 90 Ala. 583, 8 South. 812; *Hurley v. State,* 46 Ohio St. 320, 21 N. E. 645, 4 L. R. A. 161; *People v. Payne,* 131 Mich. 474, 91 N. W. 739; *State v. Johnson,* 43 S. C. 123, 20 S. E. 988; *State v. Vickers,* 47 La. Ann. 1574, 18 South. 639; *State v. Williams,* 111 La. 179, 35 South. 505.

There was no duress and no foundation for any claim of intimidation of the witness. In the absence of the jury, the court advised the witness that simply the truth was required of him.

Our holding that error was not committed is in harmony with the view of the supreme court of Minnesota, in *State v. Sederstrom,* 99 Minn. 234, 109 N. W. 113, that also being an appeal from judgment of conviction of the crime of illegal sale of intoxicating liquor. The court said:

"Nor did the court err in permitting the state to show that the witness Nash had made statements to the state's attorneys out of court which were inconsistent with his testimony. The witness had been called by the state, and had given testimony which was decidedly prejudicial to the state. Under the circumstances, the court was justified in allowing the state to show that when examined by the attorneys for the state in preparation for the trial he had told a different story. The case comes within the rule that 'a party who has called a witness in his own behalf and who is surprised by his adverse testimony may, in the discretion of the court, be allowed to show, after proper preliminary proof, that he had previously made statements contrary to his testimony.' *Selover v. Bryant,* 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418, 40 Am. St. 349; *Lindquist v. Dickson,* 98 Minn. 369, 107 N. W. 958. This rule applies in criminal and in civil cases. For a full citation and consideration of the authorities, see 2 Wigmore, Ev. § 903, *et seq.; Hurley v. State,* 46 Oh. St. 320, 21 N. E. 645, 4 L. R. A. 161; *People v. Elco,* 131 Mich. 519, 523, 91 N. W. 755, 94 N. W. 1069."

As was said in *State v. Stephens,* 116 La. 36, 40 South, 523, quoting from *State v. Williams,* 111 La. 179, 35 South. 505:

" 'It is well settled,' this court has said, 'that where a party is bona fide surprised at the unexpected testimony of his witness, he may be permitted to interrogate him as to previous declarations, inconsistent with the testimony given; the object being to test the witness' recollection and lead him, if mistaken, to review what he has said.' "

In *People v. Lukoszus,* 242 Ill. 101, 89 N. E. 749 (syllabus), it was held that:

"Where a witness gives the party calling him an unexpected answer damaging to such party, the latter has the right either to refresh the memory of the witness if he was forgetful or to probe his conscience

and move him to relent and speak the truth if he was erring."

In *State v. D'Adame*, 84 N. J. L. 386, 86 Atl. 414, Ann. Cas. 1914B 1109, it was held that, where a party is "surprised" by adverse testimony of a witness called by him, the trial court may, in the exercise of its sound discretion, permit him to offer proof of self-contradictory statements previously made by such witness, for the purpose of neutralizing the effect of such adverse testimony. The court said:

"In *State v. Johnson*, 44 *Vroom* 199, the Supreme Court held that the state might ask its witness if he had not on a previous occasion, *i. e.*, before the grand jury, made a statement contradictory of his present testimony. Obviously this could only be done because of the 'surprise' occasioned by the unexpected testimony, and to 'discredit' its effect. The previous statement, not made in the presence of the defendant, and not subject to cross-examination by him, could not be evidential against him. Its admission depended entirely upon its effect as neutralizing the witness' unexpectedly adverse testimony, and for this purpose we think it might be proved as well by the testimony of other witnesses as by the admission of the witness in question."

In *State v. Johnson*, 73 N. J. L. 199, 63 Atl. 12, a witness for the state, under examination, had failed to identify the liquor drank in the booth as beer. The witness was then asked "if he had not testified before the grand jury that it was beer that was in one or the other of the bottles." The witness was permitted to answer, over objections, that he did. The court then says:

"The objections were that a party could not thus interrogate his own witness, and that the question was leading. The learned trial judge regarded the situation as one of surprise, and on that ground admitted the question, as we think, rightly."

The case of *People v. Cotton,* 250 Ill. 338, 95 N. E. 283, is apposite. It was there said:

"It is next contended that the judgment ought to be reversed on account of improper conduct by the state's attorney in the examination of A. J. Saunders, a witness called on behalf of the People. The state's attorney did nothing improper and the real complaint is against the rulings of the court. The witness had testified touching the matter before and developed an unusual and remarkable forgetfulness and lapse of memory, and the court permitted the state's attorney to call the attention of the witness to his former testimony for the purpose of refreshing his recollection. If a witness gives testimony different from previous statements, so that his testimony is a matter of surprise to the party calling him, the party may refresh his memory by calling his attention to the former statement, either to refresh his memory or awaken his conscience."

Whether the witness Rankin, in his narration of the transaction, intentionally omitted things that occurred, as his first statement showed, to give the transaction a different color from that it would bear if all the facts were told, or whether the inconsistency of his oral and written testimony be due to faulty memory, is not material. It was for the jury, and not for the court, to consider and weigh the testimony of Rankin, and to determine what portion of it they would believe, and what they would disbelieve. The relations of the state to the witnesses it may introduce is different from that of a private party. The state has no partisan ends to serve. It has as much interest to clear the innocent as to convict the guilty, and may, therefore, produce for use all witnesses, of whatever character, whose testimony may shed light upon the investigation and aid the jury in arriving at the truth. It follows that the state is not to be prejudiced by the char-

acter of the witnesses it calls. The ascertainment of the truth is the object of the prosecution. To seriously consider as error the so-called impeachment by the state of its own witness, would be to lend assistance to the obstruction of justice.

The argument that the evidence was insufficient to sustain the conviction is unfounded. Rankin testified, after his attention had been called to his previous statement, that appellant sold, and actually delivered, the liquor to him. Husby's testimony was that he paid appellant for the liquor and that he found it at the place to which appellant directed him. The jury must have believed that appellant placed it there and was in the business of bootlegging.

We must assume that the jury took into consideration the demeanor and manner of witnesses and all the circumstances under which they testified, and it was the privilege of the jury to believe or disbelieve the testimony offered. Manifestly they concluded that the allegations of the information were established by the evidence.

We find no merit in the other assignments, and, a careful examination of the record convincing us that there was sufficient evidence to raise a question of fact, upon which the jury should pass, and that appellant had a fair and impartial trial, the judgment is affirmed.

MOUNT, MITCHELL, MAIN, and TOLMAN, JJ., concur.