[No. 24701. Department One. October 11, 1933.]

THE STATE OF WASHINGTON, *Respondent,* v. DAN FOLEY, *Appellant.*[1]

*J. A. Kavaney (T. H. McKay,* of counsel), for appellant.

*Paul O. Manley,* for respondent.

STEINERT, J.—The defendant was charged, by information, with the crime of murder in the first degree,

[1]Reported in 25 P. (2d) 565.

and upon a trial by a jury was found guilty of the crime of manslaughter. From a judgment on the verdict, defendant has appealed.

On September 6, 1932, in the forenoon, one Dana Elkins, while in a house of ill fame, was shot and mortally wounded by a person using a 38-40 calibre revolver. Elkins died the next day.

According to the state's evidence, appellant had come to the house referred to at about seven o'clock in the morning and had engaged an inmate of the place, one Betty Hayes, to have sexual intercourse with him. During his stay a quarrel arose between appellant and the woman regarding the extent of appellant's demands upon her and the amount of money that he was to pay her. Elkins, who at the time was in an adjoining room, was called by the woman and became involved in the altercation, with the result that appellant was ejected from the house. On leaving, however, appellant said to Elkins, "I will be back in an hour and take care of you with a 38." This was at about eight o'clock in the forenoon.

Appellant returned to the house shortly before nine o'clock, and in response to his knock the door was opened by the Hayes woman, whereupon appellant pushed his way into the front room, at the same time asking the woman whether she had any rooms for rent. On receiving a negative answer, he immediately pulled a revolver from his overalls. Just then Elkins emerged from an adjoining room, and the two men became engaged in a struggle for the possession of the gun, Elkins taking the initiative. The scuffle was carried on from the front room into the room from which Elkins had just emerged. Between these two rooms were heavy portieres which interfered with the view from one room into the other.

The woman, being frightened, remained at the door

of the front room, and therefore could not see what actually took place in the adjoining room. In a few minutes, however, according to her testimony, a shot was fired, followed, after a short interval, by a second shot. Immediately thereafter, appellant rushed out through the portieres flourishing a gun and threatening to shoot the woman if she made a move of any kind. Appellant then left the house, and, his identity not being known at the time, he was not apprehended until several months thereafter, when he was located in a distant part of the state.

Other evidence on the part of the state will be referred to later. Appellant's evidence tended to support his defense of an alibi, and around this issue a great part of the evidence revolved. The defendant also testified that he had never owned a 38-40 gun.

The several assignments of error raise but two questions.

Appellant first contends that the court erred in permitting cross-examination of one of the state's witnesses. It appears that in February, 1933, several months after the shooting, one Helen Hasbrouck, a girl about sixteen years of age and an acquaintance of the appellant, had made a written statement to the police officers which, in substance, was very damaging to appellant's defense of an alibi. Relying upon her written statement, the state called her as a witness at the trial, but it appeared early in her testimony that she could remember little or nothing of what she had formerly stated to the officers, although her affidavit had been given only five or six weeks prior to the time of the trial. In fact, her testimony was proceeding to a contrary effect when, to refresh her memory, the prosecutor made reference to her former statement.

Upon the request of appellant's counsel, the jury

was excused, and the examination proceeded before the court. The prosecutor then claimed surprise because of the change of front on the part of the witness, and admonished her as to the possible consequences of perjury on her part. In the examination before the court, the witness admitted that she had made the affidavit, which was exhibited to her, but insisted that she had been coerced into making it through threats of being sent to a reform school.

Upon the return of the jury, the examination of the witness continued, but no further reference was made by the prosecutor to her written statement. On cross-examination by appellant's counsel, the witness testified that she had made a previous statement to the police officers, but that she had done so because of certain threats then made concerning both herself and her mother. The prosecutor then, on redirect examination, questioned her concerning the alleged coercion, but in no way attempted to get the contents of her former statement before the jury, nor was the statement, in fact, ever admitted in evidence.

It is appellant's contention that it is not permissible for a party to attempt to impeach his own witness concerning previous inconsistent statements, in the absence of surprise or unless the purpose is to refresh the witness' memory, where the witness merely fails to testify to a material fact as expected, and further, that it is necessary, in order to authorize such examination, that the witness shall have given affirmative testimony prejudicial to the party calling him.

It may be taken for granted that the rule is as contended for by appellant, but this case does not come within that rule. Here the interrogation was expressly for the purpose of probing and refreshing the recollection of the witness according to the statement

given by her under oath just a short while before. In *State v. Sills,* 113 Wash. 497, 194 Pac. 580, we said:

"A party may, as was done in this case, interrogate the witness in respect to previous statements inconsistent with the present testimony, for the purpose of probing the recollection of the witness, show the witness that he is mistaken, and give him an opportunity to explain the apparent inconsistency, especially where the party is surprised or deceived by the testimony. [Citing cases.]"

The situation in the case at bar presented the very elements necessary to make the interrogation proper, according to the rule announced in the foregoing quotation. Further, we are satisfied, as apparently the trial court was, that there was no attempt by the prosecutor in his examination to intimidate or coerce the witness, but simply to elicit from her the truth concerning facts within her knowledge.

The appellant next contends that the court erred in giving a series of instructions relative to the crime of manslaughter. The contention is not that the instructions were incorrect statements of law, but merely that they were inapplicable to the facts as disclosed by the evidence in the case. The specific objection to the instructions is that, under the information and the evidence, the jury could have found the appellant guilty only of murder in the first degree, but not of the crime of manslaughter.

It is undoubtedly the rule in this state, as contended by appellant, that a defendant may not be convicted of a lesser degree of crime which is included in a greater degree unless there be evidence to sustain a conviction upon the minor degree. The inclusion of the lesser degree within the greater must be an inclusion in fact as well as one in law. *State v. McPhail,* 39 Wash. 199, 81 Pac. 683; *State v. Kruger,* 60 Wash. 542, 111 Pac. 769; *State v. Pepoon,* 62 Wash. 635, 114

Pac. 449; *State v. Turner,* 115 Wash. 170, 196 Pac. 638; *State v. Mahoney,* 120 Wash. 633, 208 Pac. 37; *State v. Bidwell,* 150 Wash. 656, 274 Pac. 716; *State v. Cooley,* 165 Wash. 638, 5 P. (2d) 1005. That rule, however, has no reference to the weight of testimony, but has applicability only to those cases where there is *no* testimony whatever to weigh tending to show the commission of the lesser degree of crime.

Conversely, it is also the rule that the lesser degree of crime must be submitted to the jury along with the greater degree, unless the evidence positively excludes any inference that the lesser crime was committed. *State v. Gottstein,* 111 Wash. 600, 191 Pac. 766. The reasoning in the case of *State v. Cooley, supra,* is, by analogy, to the same effect.

To establish murder in the first degree, it was necessary, so far as this case was concerned, to prove that the homicide was with a premeditated design to effect the death of Elkins. The information was drawn under subdivision 1 of Rem. Rev. Stat., § 2392. The remaining subdivisions of that section have no bearing here. To prove the premeditated design on the part of appellant, the state produced the witness Betty Hayes, who testified concerning appellant's threat on his first visit to the house, his appearance with a gun on his second visit, and the fight that ensued. This witness was the only person, aside from the two men, who was in the house at the time of the affray. She did not see the actual shooting, and, in fact, it was not shown just how the shooting occurred. The preliminary scuffle had lasted some time and had veered from one room into another before the shooting began. There was even some evidence, though slight, tending to show that appellant had no gun.

The testimony given by the woman may have been sufficient, had it been believed by the jury, to convict

the appellant of murder in the first degree, but, in addition to the fact that the witness did not see what actually occurred at the time of the shooting, there is the added fact that her testimony was subject to discredit in several respects. She was a prostitute and a paramour of the deceased, as the evidence discloses; she had been a factor in the first dispute and in the final altercation; she had for years been subject to epileptic fits; she admitted on cross-examination that, on a former occasion, she had been arrested for drinking and disorderly conduct; in some respects, at least, she had been impeached in her testimony. It seems obvious that the jury did not believe her implicitly. They manifestly did not believe that portion of her testimony on which the state relied to prove premeditated design.

The jury is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony, and in passing upon the testimony of any witness the jury has the right to take into consideration the interest that any such witness may have in the result of the trial, the manner of testifying, the former life or conduct and the addiction to immoral habits of any such witness, as shown by the evidence, in determining the credibility of such witness and the weight to be given to his testimony. *State v. Gaul,* 88 Wash. 295, 152 Pac. 1029. Since it is the exclusive province of the jury to pass upon the credibility of the witness, under rules laid down by the court, the jury may accord to the testimony such weight as it deems proper, even though the testimony be uncontradicted and not directly impeached, and may exercise its judgment and discretion in this respect to the extent of wholly disregarding the testimony where there are facts or circumstances, admitted or proved, which tend to establish the untruth of such testimony. *Wainscott v.*

*State,* 8 Okla. Cr. Rep. 590, 129 Pac. 655; *Meiggs v. State,* 16 Okla. Cr. Rep. 557, 185 Pac. 450.

If the element of design, either with or without premeditation, be eliminated from the present case, the evidence is still sufficient to support a conviction for manslaughter. The court therefore committed no error in submitting that issue to the jury under the instructions complained of.

The judgment is affirmed.

BEALS, C. J., MAIN, MITCHELL, and MILLARD, JJ., concur.