[No. 35615.   Department One.   February 8, 1962.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT MERLYN GILMORE *et al.*, *Defendants*, CHARLES WILLIAM McGINNIS, *Appellant.**

*Henry Opendack*, for appellant.

*Charles O. Carroll* and *Anthony Savage, Jr.*, for respondent.

* Reported in 368 P. (2d) 722.

HILL, J.—The defendant, Charles William McGinnis, was found guilty of burglary in the second degree. He contended, on a motion for a new trial, that he did not have a fair trial because of the presence of Lady Irene Osborn on the jury.

It is urged that since the defendant and Mrs. Osborn's son were cell mates in the King County jail, where the latter was being held awaiting transportation to the reformatory while McGinnis was awaiting trial, she must have seen McGinnis in the county jail when she went to visit her son and prior to her being selected as a juror in this case.

On *voir dire* examination the following questions were asked and answers given:

(questions by the court) "Q. Mrs. Osborn, by any chance have you heard of this incident before? A. No, I haven't. Q. Do you know any of the defendants, any of the attorneys, or any of the witnesses? A. No, I haven't. Q. Do you or any member of your family have any connection with law enforcement work? (No verbal answer.) Q. Do you think of any reason at all, Mrs. Osborn, why you could not sit as a completely fair and impartial juror in this particular case? A. No."

(question by an assistant prosecuting attorney) ". . . can you think of any reason why you can't sit as an impartial juror? A. No."

(question by defense counsel) "In your mind, Mrs. Osborn, as we sit here, are the defendants guilty or innocent? A. Innocent."

All parties passed the juror for cause.

It is now urged that she had a duty to: (a) disclose that her son was a cell mate of the defendant; and (b) disclose that her son was a convicted felon presently serving time.

Conceding that she had seen the defendant in the county jail, when she went to visit her son, she specifically denies, in a post-trial affidavit, that she knew anything about the defendant or his case prior to the trial; and there is not the slightest intimation that she did.

That Mrs. Osborn, before becoming a juror in this case, saw the defendant in jail is not prejudicial to his

right to a presumption of innocence. As we said in *State v. Boggs* (1961), 57 Wn. (2d) 484, 489, 358 P. (2d) 124,

" . . . It is common knowledge that a person charged with an offense is detained in jail during the pendency of a trial, unless he has been released on bond or on his personal recognizance. The ordinary juror would not relate detention in jail with guilt or innocence. . . ."

Counsel in his brief makes this further argument:

"Human nature and the study thereof has shown us that parents of convicted felons do not make favorable defendant jurors, but act like sheep, in fear of slipping (of the tongue) and showing by their words that they have a son who is a felon."

No authority, legal, psychological, nor sociological, is offered in support of this proposition. Passing the question of whether either the state or defendants is entitled to have "favorable" jurors, we suspect that there has been but little study of the reactions of jurors whose sons are felons.

Suffice it to say no prospective juror is obligated to volunteer such information, and there was no question asked of Mrs. Osborn designed to elicit it.

The conviction is affirmed.

Finley, C. J., Weaver, Rosellini, and Foster, JJ., concur.