[No. 37806-0-II.   Division Two.   July 28, 2010.]

*In the Matter of the Personal Restraint of* HOYT WILLIAM CRACE, *Petitioner.*

84

*Jeffrey E. Ellis* (of *Ellis Holmes & Witchley PLLC*), for petitioner.

*Mark E. Lindquist, Prosecuting Attorney,* and *Kathleen Proctor, Deputy,* for respondent.

¶1 VAN DEREN, J. — Hoyt William Crace was convicted of attempted second degree assault, first degree criminal trespass, and second degree malicious mischief. Crace petitions for a new trial or a reference hearing. Crace argues that his due process rights were violated because the jail compelled him to wear jail-issue sandals at trial. He also contends that his right to a fair trial is called into question because a juror saw him outside the courtroom in jail-issue sandals and restraints before voir dire but the juror did not disclose that fact when asked during voir dire if she knew Crace. Crace further contends that his counsel was ineffective for failing to request the lesser included offense of unlawful display of a weapon and for not objecting to Crace's wearing the sandals in court. We grant Crace's timely petition based on ineffective assistance of counsel in failing to request the lesser included instruction and because counsel's deficient representation prejudiced Crace, i.e., there is a reasonable probability that, except for counsel's unprofessional error, the result of the proceeding would have been different. We remand for a new trial on the second degree assault charge.

## FACTS

¶2 According to Crace, on August 16, 2003, he was repairing a friend's trailer located in the same mobile home park where he resided, when another resident of the trailer park offered Crace approximately one gram of cocaine. Between 10:00 AM and 2:00 PM, Crace voluntarily consumed 8 to 10 alcoholic coolers, one gram of cocaine, two doses of

the prescription pain medication Dilaudid, and one quarter piece of heroin. Crace testified that he felt very relaxed and fell asleep or partially overdosed while watching *Planet of the Apes*.

¶3 When he awoke, it was dark outside. Crace testified that he heard and saw things, grew terrified, and became convinced that he was going to be murdered. He ran screaming from his trailer, trying to find the home of two elderly women who lived nearby; instead, he entered Rita Whitten's trailer by mistake. Crace tried to tell Whitten about his fears but when she kept screaming, he quickly left.

¶4 Before Crace's entry, Whitten was in her living room watching television while her baby slept in the bedroom. According to Whitten, Crace burst through the front door, screaming about being pursued. After rifling Whitten's kitchen cabinets and drawers, Crace ran out of her home. According to Crace, he went outside and found the elderly women's trailer and spoke to them, but he did not stay there because he still thought that humans or demons were trying to murder him.

¶5 Crace returned to his trailer, took a sword off the wall, and ran down the street screaming for help. Apparently someone contacted the police, because on August 17, 2003, at 2:25 AM, Pierce County Sheriff's Deputy Theron Hardesty received a call from dispatch directing him to a possible burglary in progress at a residence in a mobile home park. As Hardesty exited his car, a man approached him and stated that an unknown male had burst into his neighbor's home and then fled. The man said that the unknown male had run about two blocks to the north and that he was armed with a sword.

¶6 Hardesty found Crace and when Crace saw Hardesty's flashlight beam, he ran toward the light with his sword in hand. Crace made eye contact with Hardesty and ran full speed toward him. As Crace ran, he yelled, " 'They are after me, someone help me.' " Report of Proceedings (RP) at 83.

¶7 Hardesty could see a long, metal object in Crace's hand and, as Crace drew closer, Hardesty identified the object as a sword. Hardesty drew his gun and directed Crace to drop the sword.[1] Crace kept running at Hardesty and Hardesty repeated his command to drop the sword. According to Crace, when he realized that an officer held the flashlight, he remained too frightened to drop the sword or to stop. Crace dropped the sword when he was approximately 50 feet from Hardesty but he continued running toward Hardesty. Hardesty repeatedly commanded Crace to get on the ground. According to Crace, he did not obey the direction to lie down on the ground because he was scared and still too far away from the officer. Crace finally complied when he was five to seven feet from Hardesty.

¶8 Hardesty handcuffed Crace and placed him in the rear seat of his patrol vehicle. Hardesty then interviewed Whitten. During the interview, Hardesty heard screams from the parking lot and ran out to see Crace kicking wildly in the back of the patrol car; Crace broke out the left rear window. According to Crace, his fears of being murdered persisted and he kicked out the window in the hope that someone would return to the vehicle to help him. Hardesty secured Crace in four point restraints and advised him of his constitutional rights. Crace told Hardesty that earlier in the evening, four or five "guys" assaulted him and that he ran from them in fear. Based on his experience as a law enforcement officer, Hardesty suspected substance abuse and asked Crace if he used drugs. Crace told Hardesty that he had ingested cocaine earlier in the day.

¶9 By amended information, the State charged Crace with second degree assault, first degree criminal trespass,

---

[1] Hardesty testified that he had received training regarding the "21 foot rule," the distance at which someone armed with a knife can reach an officer to inflict injury before an officer can draw his gun. Report of Proceedings at 77. Hardesty stated that he feared for his safety as Crace ran toward him and was prepared to shoot him even after he dropped the sword. He explained that he might have shot Crace were he to have approached a few steps closer. Hardesty demonstrated how Crace held the sword and ran toward him. The jury also saw a demonstration of the distance at which Crace dropped the sword and laid down on the ground.

and second degree malicious mischief. The State also alleged that Crace was armed with a deadly weapon while committing the assault. The trial court ordered Crace to undergo an evaluation to determine his competency to stand trial and potential defenses based on his mental condition.[2]

¶10 When the police booked Crace into jail, he wore no shoes; "the clothes listed at the time of booking were a red sweatshirt and a pair of black shorts." Br. of Resp't, App. E at 2. Clothing "brought in for trial included a pair of tan pants, a green shirt and a blue/black tie," but there were no shoes, and, according to the jail's "records, it would appear that Mr. Crace did not have a pair of civilian shoes to wear at the time of his trial." Br. of Resp't, App. E at 2. According to Crace, the jail officer told him that he "had to wear the jail-issue, orange sandals." Personal Restraint Petition (PRP), App. J. During transport, Crace wore shackles on his legs and ankles, which were removed when he arrived at court each day.

¶11 At the beginning of voir dire, the court asked the venire panel, "Do any of you know Mr. Crace? Have any of you heard anything about this particular case by potentially hearing potential witnesses talk about it, or other folks that may be involved in the case having any kind of discussion?" PRP, App. H at 6. No panel member responded. Linda Hoerling, an individual eventually seated as a juror,

---

[2] Later, the court found Crace competent to stand trial. Dr. Steven Marquez, a forensic psychologist at Western State Hospital who evaluated Crace for the State, diagnosed him with an antisocial personality disorder. He found Crace manipulative, offering exaggerated psychiatric symptoms inconsistent with any known pattern or syndrome. Crace told Marquez that five people wanted to harm him on the night of the incident. Marquez saw considerable goal-directed activity in Crace's actions and opined that Crace could form intent.

Dr. Vincent Gollogly, a second psychologist, testified for the defense. He said that Crace's voluntary intoxication led to a delusional state. Gollogly also concluded that Crace could not realize the nature of his actions due to drug ingestion. Gollogly explained that in his opinion, Crace could not accurately appraise the situation, although he could still engage in goal-directed behavior. Gollogly believed that Crace panicked and thought unclearly at the time of the offense. Gollogly testified that Crace could not form the requisite intent to commit assault, malicious mischief, or criminal trespass.

declared later that it was "a personal decision" to "not report to the court that [she] had observed Mr. Crace outside of the courtroom prior to trial." PRP, App. I at 1.

¶12 During what appears to be a three day trial,[3] Crace wore his jail-issue, orange sandals. According to Crace, "my attorney was aware that I was forced to wear jail-issue sandals to court because I told him and because he saw them on my feet." Surreply Br. of Pet'r at 5. Crace's attorney did not object to the jail-issue sandals.

¶13 The trial court instructed the jury on the charged offenses and the lesser included offense of attempted second degree assault. Crace's trial counsel did not request and the trial court did not instruct the jury on the lesser included offense of unlawful display of a weapon. The jury dead-locked on the second degree assault charge, but it found Crace guilty of attempted second degree assault. The jury also convicted him of first degree criminal trespass and second degree malicious mischief. Finally, it found that Crace was armed with a deadly weapon at the time of the attempted assault. Under the Persistent Offender Account-ability Act, RCW 9.94A.555, the trial court sentenced Crace to life without the possibility of early release based on two previous convictions of qualifying strike offenses. *See* RCW 9.94A.570; former RCW 9.94A.030(32) (2003).

¶14 After trial, Hoerling wrote an article that the *Puyallup Herald* published on September 8, 2005, describing her experience serving on Crace's jury. Hoerling called it "Mr. Sandal Foot's" jury. Br. of Resp't, App. C at 1. Crace did not realize before voir dire that Hoerling had seen him outside the courtroom wearing "plastic orange sandals with socks. . . . He was handcuffed and being escorted by two rather large . . . men in uniform. Obviously, an accused prisoner in street clothes, sans real shoes."[4] As Crace en-

---

[3] Voir dire occurred on May 11, 2004. The jury reached its verdict on May 14, 2004.

[4] Linda Hoerling, panel member number six, became a juror on Crace's trial following voir dire.

tered the courtroom before the start of voir dire, Hoerling "realized that the defendant was the man [she] had earlier observed in the hallway as socked, sandaled, and escorted." Hoerling "felt as if [she] had somehow violated some vague acquaintance[ ] or knowing the defendant rule," but she concluded that "this new revelation justified no action on [her] part."[5] Br. of Resp't, App. C at 1. Although not mentioned in her article, at some point during trial, Hoerling "came to consider the possibility that Mr. Crace was facing a third strike" because she "had read about the law and understood the process." Hoerling "did not discuss [her third strike theory] with anyone else." PRP, App. I at 1.

¶15 Crace appealed his conviction of attempted second degree assault with a deadly weapon enhancement, arguing trial court instructional error and insufficiency of the evidence. We affirmed his conviction on appeal. *State v. Crace*, noted at 128 Wn. App. 1021, 2005 WL 1540894, at *7, 2005 Wash. App. LEXIS 1540, at *18. We issued our mandate on June 19, 2007, after the Supreme Court denied Crace's motion for discretionary review. *State v. Crace*, 160 Wn.2d 1010, 161 P.3d 1026 (2007). Crace filed his PRP on May 27, 2008. On October 3, 2008, he successfully moved for permission to file an amended brief to include an additional ineffective assistance of counsel claim related to an issue raised in his original petition.

## ANALYSIS

### I. PERSONAL RESTRAINT PETITION STANDARD OF REVIEW

¶16 Relief through a PRP is available to petitioners where they are under a "restraint" that is "unlawful."[6] RAP

---

[5] These details and quotations come from an article she wrote for the *Puyallup Herald* after her jury service.

[6] Crace is under a restraint as he is confined under a judgment and sentence resulting from a decision in a criminal proceeding. RAP 16.4(b). Crace's petition is eligible based on:

   (3) Material facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or

16.4(a)-(c). Collateral relief through a PRP is limited " 'because it undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders.' " *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 670, 101 P.3d 1 (2004) (quoting *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 329, 823 P.2d 492 (1992)). Thus, challenges based on constitutional error require the petitioner to demonstrate that he "was actually and substantially prejudiced by the error." *Davis*, 152 Wn.2d at 671-72. Nonconstitutional challenges require the petitioner to show that " 'the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.' " *Davis*, 152 Wn.2d at 672 (quoting *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990)). The petitioner carries the burden to prove error by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

¶17 The petitioner must state the facts on which he bases his claim of unlawful restraint and state the evidence available to support the allegations; conclusory allegations alone are insufficient. RAP 16.7(a)(2)(i); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988). For allegations "based on matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Where the "petitioner's evidence is based on knowledge in the possession of others, he may not simply state what he thinks those others would say, but must present their affidavits or other corroborative evidence." *Rice*, 118 Wn.2d at 886. "The affidavits . . . must contain matters to which the affiants may competently

___

other order entered in a criminal proceeding or civil proceeding instituted by the state or local government; or

. . . .

(5) Other grounds exist for a collateral attack upon a judgment in a criminal proceeding or civil proceeding instituted by the state or local government . . . .

RAP 16.4(c).

testify." *Rice*, 118 Wn.2d at 886. The evidence must show that the "factual allegations are based on more than speculation, conjecture, or inadmissible hearsay." *Rice*, 118 Wn.2d at 886.

¶18 We may exercise three options in evaluating a PRP:

1. If a petitioner fails to meet the threshold burden of showing actual prejudice arising from constitutional error, the petition must be dismissed;

2. If a petitioner makes at least a prima facie showing of actual prejudice, but the merits of the contentions cannot be determined solely on the record, the court should remand the petition for a full hearing on the merits or for a reference hearing pursuant to RAP 16.11(a) and RAP 16.12;

3. If the court is convinced a petitioner has proven actual prejudicial error, the court should grant the Personal Restraint Petition without remanding the cause for further hearing.

*In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983).

¶19 If "the petitioner makes this threshold showing," we examine the State's response, which must answer the allegation and "identify all material disputed questions of fact." *Rice*, 118 Wn.2d at 886; RAP 16.9. To "define disputed questions of fact, the State must meet the petitioner's evidence with its own competent evidence" and only after "the parties' materials establish the existence of material disputed issues of fact" will we direct the superior court "to hold a reference hearing in order to resolve the factual questions." *Rice*, 118 Wn.2d at 886-87.

## II. Jail-Issue Sandals

¶20 Crace first argues that the State violated his due process right to a fair trial when "jail officers told [him] that [he] also had to wear the jail-issue, orange sandals" in court. PRP, App. J. Crace contends that wearing the jail-issue sandals in court, in conjunction with a juror's seeing him outside the courtroom in restraints, demonstrates that

his "right to a fair jury, a fair trial, or both was injured by the juror's observations of Crace, both in and out of court." PRP at 22-23. The State contends that jail officers did not compel Crace to wear the sandals: he came to jail without shoes, his clothing delivered for trial contained no shoes, and the sandals were the only footwear available to him. Furthermore, the State argues that even if jail officers compelled Crace to wear the sandals, he did not object, so the issue is not preserved for review. Crace responds that an objection is not necessary in the context of shackling and that we may reach the question of error.

¶21 We agree with the State that Crace failed to preserve the due process issue for review.

A. Standard of Review

¶22 "We review constitutional issues de novo." *State v. Castro*, 141 Wn. App. 485, 490, 170 P.3d 78 (2007).

B. Fair Trial

¶23 A defendant is "entitled to the physical indicia of innocence which includes the right of the defendant to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man." *State v. Finch*, 137 Wn.2d 792, 844, 975 P.2d 967 (1999). "This is to ensure that the defendant receives a fair and impartial trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 3, and article I, section 22 (amendment 10) of the Washington State Constitution." *Finch*, 137 Wn.2d at 843. It also preserves the defendant's presumption of innocence and, "although not articulated in the Constitution, [this presumption] 'is a basic component of a fair trial under our system of criminal justice.' " *Finch*, 137 Wn.2d at 844 (quoting *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976)).

¶24 This protection is grounded in the concern that there is a "substantial danger of destruction in the minds of the jury of the presumption of innocence where the accused

is required to wear prison garb, is handcuffed or is otherwise shackled." *Finch*, 137 Wn.2d at 844. "A defendant may not be required to appear in court in restraints because the jury may infer that the defendant is dangerous or untrustworthy," but jail attire is treated differently because it "is often used as a defense tactic to gain sympathy, so a defendant must object to being compelled to wear jail attire in court or he waives the right to argue the issue later." *State v. Levy*, 156 Wn.2d 709, 730-31, 132 P.3d 1076 (2006) (citing *State v. Sanchez*, 122 Wn. App. 579, 587-88, 94 P.3d 384 (2004)).

¶25 Crace concedes that at trial he did not object to wearing jail-issue sandals, but he argues that this error is preserved despite his trial counsel's failure to object. In the context of shackling, our Supreme Court analyzed the issue of unconstitutional shackling in the absence of counsel's objection because "[t]rial courts must weigh on the record the reasons for restraining an accused in the courtroom, recognizing the accused's right to due process." *State v. Elmore*, 139 Wn.2d 250, 273, 985 P.2d 289 (1999). But shackling suggests dangerousness and unfairly prejudices the defendant. *See Levy*, 156 Wn.2d at 730-31. Here, counsel and Crace do not cite, and we cannot find, any cases supporting Crace's contention that an objection is not necessary in the context of clothing. In fact, our case law establishes that an objection is necessary. *See Levy*, 156 Wn.2d at 730-31; *Sanchez*, 122 Wn. App. at 587-88. Because Crace failed to object to wearing the jail-issue sandals at trial, he did not preserve this issue for review and this argument fails.

III. Jury

¶26 Crace also argues that he is entitled to a new trial because Hoerling did not disclose to the court that she had seen Crace in restraints outside the courtroom. He contends that Hoerling deliberately concealed this information during voir dire, that this information was material, and that this information provided a valid basis to challenge the

juror for cause.[7] The State argues that Hoerling was not required to disclose the sighting based on the questions raised during voir dire, there is no evidence of juror bias, and there is no evidence of prejudice. The State also argues that Crace did not show that Hoerling's failure to disclose the sighting during voir dire would have entitled Crace to remove her for cause.

A. Standard of Review

¶27 We review an alleged due process violation de novo. *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004); *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 114, 937 P.2d 154, 943 P.2d 1358 (1997). Under the United States Constitution, the Sixth and Fourteenth Amendments guarantee persons accused of a crime the right to trial by an impartial jury that is unbiased and unprejudiced. *State v. Davis*, 141 Wn.2d 798, 824-25, 10 P.3d 977 (2000). The Washington Constitution provides a similar safeguard. Wash. Const. art. I, §§ 3, 22. " 'The failure to accord an accused a fair hearing violates even the minimal standards of due process.' " *Davis*, 141 Wn.2d at 824 (internal quotation marks omitted) (quoting *State v. Parnell*, 77 Wn.2d 503, 507, 463 P.2d 134 (1969)). " 'Not only should there be a fair trial, but there should be no lingering doubt about it.' " *Davis*, 141 Wn.2d at 825 (quoting *Parnell*, 77 Wn.2d at 508). But the right to a fair trial does not require a "perfect[ ] trial." *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 267, 172 P.3d 335 (2007). Instead, it requires " 'a jury capable

---

[7] Crace cites numerous federal cases in his briefs and characterizes some of these cases as controlling authority. As persuasive as the reasoning of the United States Courts of Appeals and the Court of Appeals for the Ninth Circuit may be, these cases do not bind this court—we are bound only by the decisions of the Washington Supreme Court and nonsupervisory decisions of the United States Supreme Court. *State v. Bennett*, 161 Wn.2d 303, 317, 165 P.3d 1241 (2007); *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997); *Eriksen v. Mobay Corp.*, 110 Wn. App. 332, 345-47, 41 P.3d 488 (2002); *Brown v. Scott Paper Worldwide Co.*, 98 Wn. App. 349, 355, 989 P.2d 1187 (1999), *aff'd*, 143 Wn.2d 349, 20 P.3d 921 (2001); *see State v. Luther*, 157 Wn.2d 63, 82, 134 P.3d 205 (2006); *State v. Gonzales-Morales*, 138 Wn.2d 374, 382, 979 P.2d 826 (1999); *see also Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47, 204 P.3d 885 (2009); *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 271, 501 P.2d 290 (1972).

and willing to decide the case solely on the evidence before it.' " *Elmore*, 162 Wn.2d at 267 (internal quotation marks omitted) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984)). " 'A strong, affirmative showing of misconduct is necessary in order to overcome the policy favoring stable and certain verdicts and the secret, frank and free discussion of the evidence by the jury.' " *Elmore*, 162 Wn.2d at 267 (quoting *State v. Balisok*, 123 Wn.2d 114, 117-18, 866 P.2d 631 (1994)).

¶28 "In order to receive a new trial, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire and then further show that a correct response would have provided a valid basis for a challenge for cause." *Elmore*, 162 Wn.2d at 267. Only "reasons that affect a juror's impartiality . . . affect the fairness of a trial." *Elmore*, 162 Wn.2d at 267-68.

B. Answer to a Material Question

¶29 A juror's answer is honest and additional information is not required when a juror is not expected to volunteer the information and a question is not asked that is designed to elicit the additional information. *State v. Gilmore*, 59 Wn.2d 514, 515-16, 368 P.2d 722 (1962). In *Gilmore*, counsel asked a prospective juror whether she knew of the incident at hand or any of the defendants, attorneys, or witnesses—she answered, " 'No.' " 59 Wn.2d at 515. Counsel also asked whether there was any reason she could not be fair and impartial, and she again answered, " 'No.' " *Gilmore*, 59 Wn.2d at 515. On appeal, Gilmore argued that the juror had a duty to "(a) disclose that her son was a cell mate of the defendant; and (b) disclose that her son was a convicted felon presently serving time." *Gilmore*, 59 Wn.2d at 515. By posttrial affidavit, the juror admitted seeing the defendant in jail when she visited her son but denied knowing anything about him or his case before trial. *Gilmore*, 59 Wn.2d at 515. Our Supreme Court held that "no prospective juror is obligated to volunteer such informa-

tion" when counsel failed to ask a question of the juror "designed to elicit it." *Gilmore*, 59 Wn.2d at 516.

¶30 Here, Hoerling wrote a newspaper article following her jury service in which she described her experiences, including her sighting Crace outside the courtroom in handcuffs and wearing "plastic orange sandals with socks." Br. of Resp't, App. C at 1. Crace fails to show that Hoerling did not honestly answer a material question during voir dire—trial counsel could ask during voir dire whether any jury panel members had ever seen the defendant before voir dire—if that is the information desired.

## C. Bias

¶31 Crace also fails to establish a valid basis for a "for cause" challenge had Hoerling told the trial court that she saw Crace before voir dire. "A prospective juror must be excused for cause if the trial court determines that the juror is actually or impliedly biased." *State v. Gosser*, 33 Wn. App. 428, 433, 656 P.2d 514 (1982); RCW 4.44.170. Implied bias is conclusively presumed from the juror's factual circumstances as applied to the statutory provisions.[8] RCW 4.44.170(1); *State v. Noltie*, 116 Wn.2d 831, 838, 809 P.2d 190 (1991). Implied bias exists where there is:

(1) Consanguinity or affinity within the fourth degree to either party.

(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to a party; or being a member of the family of, or a partner in business with, or in the employment for wages, of a party, or being surety or bail in the action called for trial, or otherwise, for a party.

(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the

---

[8] Crace inaccurately states, "Implied bias arises from a juror's failure to answer questions truthfully during the *voir dire* process." PRP at 17. The statute does not identify dishonesty unrelated to voir dire issues per se, as a basis for finding implied bias, and no Washington court has read such a provision into the statute. *See* RCW 4.44.180.

same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.

(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

RCW 4.44.180. Providing dishonest or materially misleading answers during voir dire in an effort to persuade the parties that one should serve on the jury can provide a basis for implied bias because the desire to serve on a jury at the expense of answering voir dire inquiries honestly is an interest beyond that of an ordinary citizen. *See State v. Cho*, 108 Wn. App. 315, 328, 30 P.3d 496 (2001).

¶32 Hoerling saw Crace restrained and did not volunteer this fact. During voir dire, Hoerling explained her understanding of the presumption of innocence and confirmed that Crace is presumed innocent, "[It m]eans he walks in as any other person would. I don't know the man; I don't know what he's done; I don't know the facts." PRP, App. H at 53. When questioned, no venire panel member stated that he or she would not presume Crace innocent. Hoerling's only concern focused on voting not guilty, were the State to present no evidence; she seemed to believe that a mistrial is more appropriate in those circumstances. In a posttrial declaration, Hoerling explained that it was "a personal decision" to "not report to the court that I had observed Mr. Crace outside of the courtroom prior to trial." PRP, App. I at 1.

¶33 Although "Crace asserts that both types of bias [actual and implied] are present," he argues only that Hoerling should have been dismissed based on implied bias but he provides no legal or factual basis to support a claim of actual bias. PRP at 17. Crace also fails to establish implied bias: there is no evidence that Hoerling is related by blood to a party, has a special relationship with either party, served as a juror in a case involving the same parties, or had an interest beyond that as a citizen. He establishes only

that Hoerling's decision not to tell the trial court that she saw Crace in restraints was "personal." Crace could have explored the "personal" decision and what Hoerling's interest was, but that information was not before the trial court and is not before us in the declarations.

¶34 In a PRP, the petitioner must state the facts that support the petitioner's claim and "evidence available to support the factual allegations." RAP 16.7(a)(2)(i). The evidence Crace provides is not sufficient to support a finding of implied bias. If Hoerling had stated in her declaration that she withheld the information that she had seen Crace outside the courtroom because she wanted to serve on a jury, then the evidence would be stronger. But the evidence before us is not sufficient for a finding of implied bias or to support an order for a reference hearing on the matter.

D. Prejudice

¶35 Moreover, Crace fails to demonstrate prejudice apparent from Hoerling's journalistic revelations. Washington courts have never held that "[t]he mere fact that a jury sees an inmate wearing shackles" mandates reversal of a conviction. *State v. Rodriguez*, 146 Wn.2d 260, 270, 45 P.3d 541 (2002) (citing *State v. Gosser*, 33 Wn. App. at 435). Instead, "a defendant must show prejudice, that is, 'a substantial or injurious effect or influence on the jury's verdict.' " *Elmore*, 139 Wn.2d at 274 (quoting *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998)). Even where a defendant is shackled in the courtroom in front of the jury,[9] which would likely create a presumption of prejudice on direct appeal, in a PRP "the [petitioner] is *not* entitled . . . to a presumption of prejudice which the state would have to overcome by evidence beyond a reasonable doubt. Rather, the [petitioner] bears the burden of showing *actual* prejudice." *Davis*, 152 Wn.2d at 698.

---

[9] Crace does not contend that he was restrained at any time other than in the hallway within the view of Hoerling.

¶36 Passing glimpses of a defendant in restraints are insufficient on their own to find the existence of prejudice. In *Gosser*, the defendant moved for a mistrial on the basis that jailers removed his shackles in the corridor outside the courtroom, "presumably in the presence of at least some of the jurors." 33 Wn. App. at 435. The trial court denied Gosser's motion for a mistrial. *Gosser*, 33 Wn. App. at 435. On appeal, we affirmed the denial, reasoning that "beyond [the] defendant's bare allegation, there is no indication in the record that the incident prejudiced the minds of the jurors against [the] defendant." *Gosser*, 33 Wn. App. at 435-36. Division Three of this court reached the same conclusion and held that a defendant's "mere appearance in handcuffs during jury selection [did] not indicate the incident 'inflamed or prejudiced' the jurors against [the defendant]." *State v. Early*, 70 Wn. App. 452, 462, 853 P.2d 964 (1993)).

¶37 Even a more prolonged viewing does not necessarily rise to the level of prejudice. Our Supreme Court pointed out that in *"Clark*,[10] we held that the defendant was not prejudiced when the jury saw him shackled on the first day of voir dire and on the day the verdict was returned, but the defendant sat unrestrained throughout the trial." *Davis*, 152 Wn.2d at 697. The court reasoned that "Clark's shackling on the first day of voir dire and the day of the verdict was harmless error beyond a reasonable doubt" because "in the minds of the jurors Clark's shackling on the first day of voir dire was more than logically offset by over two weeks of observing Clark in the courtroom without shackles." *Clark*, 143 Wn.2d at 776.

¶38 Apparently Crace's argument is that Hoerling saw Crace restrained outside of the courtroom while he wore jail-issue sandals; the restraint was relevant because his crime was a violent one; the jury's attempt conviction demonstrates the weakness of the evidence against Crace; and that the bias from seeing his restraint "may have

---

[10] *State v. Clark*, 143 Wn.2d 731, 776, 24 P.3d 1006 (2001).

played a significant role in the jury's decision." PRP at 22. The nature of the prejudice seems to be that Hoerling saw the jail-issue sandals and restraint of Crace outside the courtroom and seeing the sandals each day in the courtroom reminded her of his restraint, evidenced by the fact that Hoerling thought Crace might face a third strike. As Washington does not recognize per se or even presumptive prejudice for fleeting glimpses of restraints inside or outside the courtroom and Crace's factual claims related to the sandals and the restraints do not demonstrate actual and substantial prejudice, Crace's argument fails.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

¶39 Crace further argues that his trial counsel was ineffective for failing to request a lesser included instruction for unlawful display of a weapon. And Crace amended his original petition to include a claim that his trial counsel was ineffective because he failed to object to Crace's jail-issue sandals. The State argues that failing to request a lesser included offense is generally a reasonable trial strategy and thus a tactical decision. In response to the amended petition, the State contends that the amendment is time barred and, even were it not, it would fail because counsel was not ineffective and Crace was not prejudiced. Here, Crace fails to show that his jail-issue sandals and restraint claims, which underlie one of his ineffective assistance of counsel claims, resulted in any prejudice. But Crace does establish that his attorney's decision not to propose the lesser included offense instruction for unlawful display of a weapon was deficient performance that resulted in prejudice. Therefore, we grant his petition, in part, for ineffective assistance of trial counsel.

A. Standard of Review

¶40 We review claims of ineffective assistance of counsel de novo. *State v. Cross*, 156 Wn.2d 580, 605, 132 P.3d 80 (2006). The proper procedure for raising an ineffective assistance claim based on matters outside the record is

a PRP. *State v. Byrd*, 30 Wn. App. 794, 800, 638 P.2d 601 (1981). For a defendant to prevail on a claim of ineffective assistance of counsel, he must show (1) that counsel's representation was deficient and (2) that the deficient representation prejudiced him. *State v. Aho*, 137 Wn.2d 736, 745, 975 P.2d 512 (1999). To meet the first part of the test, the representation must have fallen "below an objective standard of reasonableness based on consideration of all of the circumstances." *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). This part is "highly deferential and courts will indulge in a strong presumption of reasonableness." *Thomas*, 109 Wn.2d at 226. For the second part, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," but the appellant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland v. Washington*, 466 U.S. 668, 693-94, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In a PRP, the petitioner usually must show by a preponderance of the evidence that the ineffectiveness claim is supported by a constitutional error that worked to his actual and substantial prejudice or by a nonconstitutional error that results in a complete miscarriage of justice. *Davis*, 152 Wn.2d at 672; *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 874, 883, 16 P.3d 601 (2001); *see In re Pers. Restraint of Benn*, 134 Wn.2d 868, 940-41, 952 P.2d 116 (1998); *In re Pers. Restraint of Frampton*, 45 Wn. App. 554, 562 n.8, 726 P.2d 486 (1986); *see, e.g., In re Pers. Restraint of Merritt*, 69 Wn. App. 419, 425, 848 P.2d 1332 (1993); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).

B. Failure To Object to Jail-Issue Sandals

¶41 Because we hold that Crace failed to demonstrate that his underlying claim that the jail attire and the fleeting glimpse by the juror of his restraint caused actual and substantial prejudice, we reach neither this ineffective assistance of counsel claim nor the parties' arguments about a time bar to amendment.

C. Failure To Instruct on the Lesser Included Offense of Unlawful Display of a Weapon

¶42 Under the test announced in *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978), a "defendant is entitled to an instruction on a lesser included offense if (1) each element of the lesser offense is necessarily included in the charged offense and (2) the evidence in the case supports an inference that the defendant committed only the lesser crime." *State v. Gamble*, 137 Wn. App. 892, 905, 155 P.3d 962 (2007), *aff'd*, 168 Wn.2d 161, 225 P.3d 973 (2010). The two parts of the test are respectively referred to as the " 'legal' " and the " 'factual' " prongs. *State v. Rodriguez*, 48 Wn. App. 815, 817, 740 P.2d 904 (1987). After satisfying the two *Workman* prongs, the "Washington rule"[11] commands that "a lesser included offense instruction is required as a matter of right." *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 613, 56 P.3d 981 (2002); *State v. Lyon*, 96 Wn. App. 447, 450, 979 P.2d 926 (1999), *overruled on other grounds by Andress*, 147 Wn.2d at 613-16.

¶43 The petitioner satisfies the factual prong of the *Workman* test "when substantial evidence in the record supports a rational inference that the defendant committed only the lesser included . . . offense to the exclusion of the greater offense." *State v. Fernandez-Medina*, 141 Wn.2d 448, 461, 6 P.3d 1150 (2000). "It is not enough that the jury might simply disbelieve the State's evidence. Instead, some

---

[11] The "Washington rule" has its origins in the chapter 10.61 RCW authorization for juries to find defendants not guilty or guilty of any lesser crime that the evidence supports. *Workman*, 90 Wn.2d at 447-48; *see State v. Gottstein*, 111 Wash. 600, 602, 191 P. 766 (1920); *State v. Greer*, 11 Wash. 244, 246-47, 39 P. 874 (1895); *see also State v. Foley*, 174 Wash. 575, 580, 25 P.2d 565 (1933).

This rule is a "procedural safeguard" that reduces the "risk of error in the factfinding process" and "can also be beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Beck v. Alabama*, 447 U.S. 625, 637, 632-33, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980). Underlying the rule is a concern that "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." *Keeble v. United States*, 412 U.S. 205, 212-13, 93 S. Ct. 1993, 36 L. Ed. 2d 844 (1973).

evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given." *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), *overruled on other grounds by State v. Blair*, 117 Wn.2d 479, 816 P.2d 718 (1991). "When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction." *Fernandez-Medina*, 141 Wn.2d at 455-56.

¶44 "Second degree assault" is the act of intentionally assaulting another person and recklessly inflicting substantial bodily harm or assaulting another with a deadly weapon, not amounting to first degree assault. *See* former RCW 9A.36.021(1)(a), (c) (2003). A " '[d]eadly weapon' means any . . . weapon, device, instrument, article, or substance [that] is used, attempted to be used, or threatened to be used [that] is readily capable of causing death or substantial bodily harm." Former RCW 9A.04.110(6) (1988).

¶45 "To convict a defendant of second degree assault, the jury must find specific intent to create reasonable fear and apprehension of bodily injury." *State v. Ward*, 125 Wn. App. 243, 248, 104 P.3d 670 (2004) (citing *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995)). For instance, a defendant's "intent may be inferred from pointing a gun, but not from mere display of a gun." *Ward*, 125 Wn. App. at 248 (citing *State v. Eastmond*, 129 Wn.2d 497, 500, 919 P.2d 577 (1996)).

¶46 To convict based on unlawful display of a weapon, the defendant must

> carry, exhibit, display, or draw any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

RCW 9.41.270(1). Because all the elements of unlawful display of a weapon are also necessary elements of second

degree assault, unlawful display of a weapon is a lesser included offense of second degree assault, satisfying the legal prong of the *Workman* test. RCW 9.41.270(1); RCW 9A.36.011; *Ward*, 125 Wn. App. at 248; *see, e.g., Fowler*, 114 Wn.2d at 67.

¶47 Under the factual prong of the *Workman* test, to justify a lesser included offense instruction for unlawful display of a weapon, the evidence must support an inference that Crace only displayed the sword and that he had no intent to create reasonable fear or apprehension of bodily injury, i.e., that he committed only the lesser offense. *See Ward*, 125 Wn. App. at 248. Crace testified that even before he realized Hardesty was a deputy, he had no intention of attacking Hardesty and he never formed the intent to assault Hardesty. Crace explained that he dropped the sword as commanded but continued toward the deputy because he wanted to get close enough so that the deputy could protect him from the humans or demons Crace believed were trying to kill him.

¶48 Crace further testified that he took the sword out of the trailer only to protect himself. After reading reports from Western State Hospital and interviewing Crace, Dr. Gollogly testified that Crace suffered from diminished capacity because Crace experienced a psychotic break after ingesting "a lot of drugs" and explained that people can "do really strange and crazy things while they are under the influence of the drugs and [experience a] psychotic episode." RP at 173-74. Deputy Hardesty also testified that he asked whether Crace was under the influence of drugs because of Crace's aberrant behavior, which could confirm Crace's testimony and Gollogly's theory.

¶49 Viewed in the light most favorable to Crace, the evidence presented at trial could have allowed the jury to find Crace was unable to form the intent necessary to commit second degree assault or attempted second degree assault. Thus, Crace satisfies the factual prong of the *Workman* test, entitling him to an instruction on the lesser included offense of unlawful display of a weapon.

¶50 Because conviction of only that lesser crime would have resulted in a sentence of less than one year instead of a life sentence, Crace meets the deficient performance prong of *Strickland*: Pursuing an all-or-nothing strategy in these circumstances was not a reasonable trial tactic. *See State v. Smith*, 154 Wn. App. 272, 278-79, 223 P.3d 1262 (2009); *State v. Grier*, 150 Wn. App. 619, 642-44, 208 P.3d 1221 (2009), *review granted*, 167 Wn.2d 1017 (2010); *State v. Pittman*, 134 Wn. App. 376, 387-89, 166 P.3d 720 (2006); *Ward*, 125 Wn. App. at 249-50. We do not here establish a rule that pursuing an all-or-nothing strategy is per se defective performance or ineffective assistance of counsel—we merely cannot discern any legitimate reason why Crace's attorney failed to request an instruction for the lesser included offense of unlawful display of a weapon.[12] We hold that Crace's attorney's trial tactics were not reasonable given the disparity between the sentence for unlawful display of a weapon[13] and his life sentence for attempted second degree assault.[14]

¶51 Under the prejudice prong of his ineffective assistance of counsel claim, Crace must also establish that there is a reasonable probability that the outcome of his trial would have changed had his attorney requested, and the trial court offered, the instruction for unlawful display of a weapon. *Smith*, 154 Wn. App. at 278-79;[15] *Grier*, 150 Wn. App. at 644-45; *Pittman*, 134 Wn. App. at 390; *Ward*, 125

---

[12] When facing a third "most serious offense," an all-or-nothing approach may represent a more reasonable trial strategy where the lesser included offense would result in a similarly lengthy sentence or where the defendant had reached an advanced age or contracted a terminal illness.

[13] As a gross misdemeanor, unlawful display of a weapon is punishable with a jail term of less than one year. RCW 9.41.270(2); former RCW 9A.20.021 (2003).

[14] The maximum standard range sentence for second degree assault is ordinarily 63 to 84 months' confinement. RCW 9.94A.510, .515. But as a persistent offender, Crace received a life sentence without the possibility of early release for his third "most serious offense"—the attempted second degree assault conviction. RCW 9.94A.570; former RCW 9.94A.030(32).

[15] In *Smith*, we did not analyze prejudice in depth, focusing our analysis on the deficient performance prong, but mentioned that Smith established "both prongs of his ineffective assistance of counsel claim on the instructional issue." 154 Wn.

Wn. App. at 251. Dr. Gollogly testified that because of diminished capacity, Crace could not form the requisite intent to commit assault, malicious mischief, or criminal trespass. But Dr. Marquez testified that Crace could form the requisite intent for each of the crimes and that Crace had seemed to respond to interviews in an exaggerated or misleading manner to effect the psychological testing.

¶52 Although the jury disagreed with Crace's diminished capacity defense for first degree criminal trespass and second degree malicious mischief, the crime of second degree attempted assault requires a different intent. PRP App. G; *compare* RCW 9A.52.070(1), *and* former RCW 9A.48.080(1) (1994), *with* former RCW 9A.36.021(1)(c), *and* RCW 9A.28.020(1). And the possibility that the jury might have convicted Crace of unlawful display of a weapon undermines confidence in the jury's verdict. Had the trial court instructed the jury on the lesser included offense, there is a reasonable probability that the jury would have convicted Crace of unlawful display of a weapon instead of attempted second degree assault.

¶53 At oral argument, the State contended that Crace must show prejudice beyond that required by the *Strickland* prejudice prong. We agree that " 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.' " *Davis*, 152 Wn.2d at 675 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)). But we disagree that a petitioner must undermine our confidence in the trial more than an appellant must.

¶54 The reliability of a proceeding is undermined where the petitioner shows how "defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251

---

App. at 279. At no point did we state that establishing defective performance automatically established prejudice. *See Smith*, 154 Wn. App. at 277-79.

(1995). Our Supreme Court has referred to " *'reasonable probability'* " as " 'a probability sufficient to undermine confidence in the outcome' of [the] trial." *In re Pers. Restraint of Hutchinson,* 147 Wn.2d 197, 208, 53 P.3d 17 (2002) (quoting *Strickland,* 466 U.S. at 694). And this court, our Supreme Court, and the United States Supreme Court have referred to the showing of prejudice in the ineffective assistance of counsel context to be a showing of "actual prejudice."[16] *Smith v. Robbins,* 528 U.S. 259, 286, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000); *State v. Crawford,* 159 Wn.2d 86, 97, 147 P.3d 1288 (2006); *State v. Contreras,* 92 Wn. App. 307, 319, 966 P.2d 915 (1998); *see McFarland,* 127 Wn.2d at 338; *Thomas,* 109 Wn.2d at 225-26; *see also In re Pers. Restraint of Dalluge,* 152 Wn.2d 772, 789 n.10, 100 P.3d 279 (2004); *In re Pers. Restraint of Yim,* 139 Wn.2d 581, 590, 989 P.2d 512 (1999); *State v. Sosa,* 59 Wn. App. 678, 686-87, 800 P.2d 839 (1990); *Dorsey v. King County,* 51 Wn. App. 664, 674, 754 P.2d 1255 (1988).

¶55 Washington courts granting petitions based on ineffective assistance of counsel have only stated that the petitioner established the "reasonable probability" standard from *Strickland. Brett,* 142 Wn.2d at 883; *In re Pers. Restraint of Fleming,* 142 Wn.2d 853, 866-67, 16 P.3d 610 (2001); *In re Pers. Restraint of Hubert,* 138 Wn. App. 924, 930-32, 158 P.3d 1282 (2007); *In re Pers. Restraint of Sims,* 118 Wn. App. 471, 478, 480, 73 P.3d 398 (2003); *In re Pers.*

---

[16] In *Davis,* our Supreme Court even equated the *Strickland* prejudice standard with actual and substantial prejudice:

> [P]etitioner argues that his defense counsel's failure to object . . . was ineffective assistance of counsel. Assuming that the failure to object was deficient performance, Petitioner still bears the burden of proof that his counsel's failure to object resulted in actual and substantial prejudice. In the *guilt phase* of the trial, the question to be answered is "whether there is a reasonable probability that, absent the error[ ], the factfinder would have had a reasonable doubt respecting guilt."
>
> Petitioner Davis cannot establish actual and substantial prejudice . . . . Because there was overwhelming evidence of his guilt, he cannot show there was a reasonable probability that, *but for* his counsel's deficient performance by not objecting, the outcome of his trial would have been different.

152 Wn.2d at 700 (second alteration in original) (footnote omitted) (quoting *Strickland,* 466 U.S. at 695).

*Restraint of Hoisington*, 99 Wn. App. 423, 434-35, 993 P.2d 296 (2000); *see In re Pers. Restraint of McCready*, 100 Wn. App. 259, 265, 996 P.2d 658 (2000). Some opinions may have led the State to mistakenly believe that a petitioner must satisfy a heightened prejudice requirement under actual and substantial prejudice that exceeds the showing of prejudice necessary to successfully establish the *Strickland* prejudice prong. *See, e.g.*, *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487-94, 965 P.2d 593 (1998); *In re Pers. Restraint of Davis*, 151 Wn. App. 331, 337, 211 P.3d 1055 (2009).

¶56 For example, language in *Pirtle* may have caused some confusion due to its analysis of numerous ineffective assistance of counsel challenges.[17] *See* 136 Wn.2d at 474 & n.3. Addressing the claims serially, the court held that Pirtle failed to show that different portions of counsel's investigation reflected defective performance, caused "prejudicial error," or represented legal errors. *Pirtle*, 136 Wn.2d at 488. The court next held that Pirtle failed to demonstrate counsel's cross-examination "was either ineffective or prejudicial." *Pirtle*, 136 Wn.2d at 489. The court then addressed Pirtle's claim that he received ineffective assistance of counsel when his attorney did not object to testimony and the court held that the underlying substantive claim failed because "even if there [was] an evidentiary error . . . , such an error does not constitute a 'fundamental defect' amounting to a 'miscarriage of justice' entitling Pirtle to relief, especially in light of Pirtle's own testimony." *Pirtle*, 136 Wn.2d at 489 (quoting *Cook*, 114 Wn.2d at 811). The court also held that Pirtle did not show a "reasonable

---

[17] The relevant challenges included claims that

> [Pirtle's] trial counsel was ineffective during the guilt phase because his trial counsel (i) conducted an ineffective investigation; (ii) provided inadequate cross-examination of two prosecution witnesses; (iii) failed to object to inadmissible opinion testimony; (iv) opened the door to examining [a jailhouse informant] about Pirtle's lack of remorse; (v) was ineffective in numerous "off the record conferences;" (vi) failed to provide a jury instruction on a diminished capacity defense; and (vii) was ineffective in handling [a police witness]'s testimony.

*Pirtle*, 136 Wn. at 487.

probability the proceeding's outcome would be different" had his attorney not opened the door to "Pirtle's lack of remorse." *Pirtle*, 136 Wn.2d at 490-91. The court next held that, even assuming Pirtle's attorney discussed legal matters in conferences outside his presence, Pirtle did not demonstrate that his absence from conferences reflected a substantive error that met the standard of "being actually and substantially prejudiced by a violation of his constitutional rights or by a fundamental error of law." *Pirtle*, 136 Wn.2d at 491. The court declined to reach his jury instruction claim because he had already litigated the claim on direct appeal. *Pirtle*, 136 Wn.2d at 491. And, the court held that his attorney's handling of a police witness did not establish reversible error and failing to impeach the officer did not "constitute[ ] prejudicial error." *Pirtle*, 136 Wn.2d at 492.

¶57 The *Pirtle* court did not hold that the petitioner established ineffective assistance of counsel but turned around and denied Pirtle's petition based on an elevated prejudice standard. And no published Washington opinion has reached that result. We decline to so hold, confident that a "criminal defendant who obtains relief under *Strickland* does not receive a windfall; on the contrary, reversal of such a defendant's conviction is necessary to ensure a fair and just result." *Kimmelman*, 477 U.S. at 393 (Powell, J., concurring).[18] Instead we hold that Crace's entitlement to an instruction on the lesser included offense,

---

[18] Were we to hold otherwise, a PRP would alter the *Strickland* standard, perhaps requiring a petitioner to show that it is *more likely than not* that, but for counsel's defective performance, the outcome of the trial would have changed. Our confidence would need to be *very much undermined* in order to grant relief. The Supreme Court declined to use such a standard in *Strickland*: "[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." 466 U.S. at 693. And raising the standard would fly in the face of the Supreme Court's application of the *Strickland* standard to collateral review in federal courts: "[P]rinciples governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." 466 U.S. at 697. Time and again, federal courts have declined to restrict a petitioner's right to collateral review:

Because collateral review will frequently be the only means through which an accused can effectuate the right to counsel, restricting the litigation of some Sixth Amendment claims to trial and direct review would seriously interfere with an accused's right to effective representation. A layman will ordinarily be

when combined with his ability to establish both prongs of ineffective assistance of trial counsel, demonstrates prejudice sufficient for this court to grant him relief.

¶58 We grant Crace's petition in part and remand for retrial on the second degree assault charge.

ARMSTRONG, J., concurs.

¶59 QUINN-BRINTNALL, J. (dissenting) — I respectfully dissent from the majority opinion for two reasons. First, in my opinion, on the evidence presented that Deputy Theron Hardesty continued to fear for his safety as Hoyt William Crace ran toward him after having dropped the sword, no ordinary, reasonable juror could find that Crace committed only the lesser offense of displaying a weapon. Second, and of greater concern, I believe the majority improperly applies the direct review standard for reviewing an ineffective assistance of counsel claim to Crace's personal restraint petition (PRP). The majority thus fails to place on Crace the burden of proving his counsel failed to conduct his defense as would an ordinary, reasonably prudent attorney and that this failure caused him actual and substantial prejudice sufficient to trigger this court's authority to vacate a mandated judgment and sentence entered following his direct appeal of the jury's verdict.

¶60 Citing *Strickland v. Washington*, 466 U.S. 668, 693-94, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the majority properly characterizes the standard of review for determining the prejudice prong of an ineffective assistance of counsel claim brought in a direct appeal. *See* majority at 105. The majority also acknowledges our limited review of

unable to recognize counsel's errors and to evaluate counsel's professional performance, consequently a criminal defendant will rarely know that he has not been represented competently until after trial or appeal, usually when he consults another lawyer about his case. Indeed, an accused will often not realize that he has a meritorious ineffectiveness claim until he begins collateral review proceedings, particularly if he retained trial counsel on direct appeal.

*Kimmelman*, 477 U.S. at 378 (citation omitted).

PRPs under the "actual and substantial prejudice" standard. But the majority explicitly disregards the limitations on this court's authority to vacate final judgments, weighs the evidence in Crace's favor, and reviews Crace's claim de novo as if it had been raised on direct review. *See* majority at 96, 104, 106.

¶61 When, as here, a personal restraint petitioner bases his challenge on an alleged constitutional error, he must demonstrate that he "was actually and substantially prejudiced by the error." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). Appellate courts are limited to granting collateral relief through a PRP under this higher standard because such collateral relief " 'undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders.' " *In re Davis*, 152 Wn.2d at 670 (quoting *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 329, 823 P.2d 492 (1992)). The principles underlying limited collateral relief are no less compelling where a petitioner claims ineffective assistance of counsel.

¶62 The majority cites several Washington cases granting PRPs based on a petitioner's ineffective assistance of counsel claim which appear to apply the *Strickland* "reasonable probability" standard for determining prejudice without further determining whether the petitioner demonstrated "actual and substantial prejudice" resulting from his counsel's deficient performance, the appropriate standard upon which we can grant relief through a PRP. *See* majority at 111-12 (citing *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 883, 16 P.3d 601 (2001); *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 866-67, 16 P.3d 610 (2001); *In re Pers. Restraint of Hubert*, 138 Wn. App. 924, 930-32, 158 P.3d 1282 (2007); *In re Pers. Restraint of Sims*, 118 Wn. App. 471, 478, 480, 73 P.3d 398 (2003); *In re Pers. Restraint of Hoisington*, 99 Wn. App. 423, 434-35, 993 P.2d 296 (2000); *see In re Pers. Restraint of McCready*, 100 Wn. App. 259, 265, 996 P.2d 658 (2000)). But none of the majority's cited cases have squarely addressed whether the "reasonable

probability" standard is appropriate when the ineffective assistance of counsel claim is raised for the first time in the context of a PRP, which requires a showing of "actual and substantial prejudice" before the reviewing court may grant the petition. Instead, these cases assume without analysis that reviewing courts apply the same standard to ineffective assistance of counsel claims whether brought in a direct appeal or in a PRP and thus do not acknowledge the court's limited authority to grant collateral relief through a PRP.

¶63 The majority also cites *In re Davis*, 152 Wn.2d at 700, a capital case, for the proposition that the "actual and substantial prejudice" standard equates with the *Strickland* prejudice standard. Majority at 111 n.16. But in *In re Davis*, our Supreme Court reviewed the petitioner's numerous ineffective assistance of counsel claims related to the guilt phase of his trial and held that the petitioner failed to meet the *Strickland* prejudice prong. Thus, our Supreme Court in *In re Davis* did not address whether meeting the *Strickland* prejudice standard alone would satisfy the "actual and substantial prejudice" standard required to grant collateral relief through a PRP on a judgment of conviction. Although the *In re Davis* court determined that petitioner's trial counsel was ineffective during the penalty phase of his trial, our Supreme Court applied a heightened level of scrutiny applicable to claims of error associated with the penalty phase in capital cases. *State v. Benn*, 120 Wn.2d 631, 661, 845 P.2d 289 (citing *State v. Lord*, 117 Wn.2d 829, 888, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992)), *cert. denied*, 510 U.S. 944 (1993). Because of the unique nature of punishment for capital offenses, a personal restraint petitioner who claims his counsel was ineffective during a capital sentencing proceeding shifts the burden and our Supreme Court errs on the side of finding prejudice. *See In re Davis*, 152 Wn.2d at 763 (Chambers, J. concurring). Accordingly, the *In re Davis* court's review of petitioner's ineffective assistance of counsel claim as related to the *penalty phase* of his trial for

a capital offense does not control the analysis in this case involving the jury's verdict of the substantive offense.[19]

¶64 Additionally, it is not at all clear to me that Crace's counsel's conduct fell below that of a modern, ordinary, reasonably prudent defense counsel. Under court rules governing jury instructions, counsel are directed to (1) file proposed jury instructions and (2) take exception to instructions or lack of instructions in order to call potential instructional deficiencies to the trial court's attention. CrR 6.15(a), (c). Through a tortuous series of cases, however, an exception to the requirement that defense counsel must except to the trial court's instructions to preserve error for review has developed. As Justice Horowitz recognized in *State v. Ermert*, 94 Wn.2d 839, 850 n.1, 621 P.2d 121 (1980), absent a claim of ineffective assistance of counsel, appellate courts lack authority to review jury instructions to which no exception was taken.

¶65 Through the intervening years, the ineffective assistance of counsel exception to the issue preservation requirement has become so pervasive that an ordinary, reasonably competent defense counsel routinely ignores rules requiring the presentation of defense proposed instructions as required under CrR 6.15(a) and, to a lesser extent, the taking of exceptions to the trial court's jury instructions as required under CrR 6.15(c). This decision appears to be based on the fact that the invited error doctrine has been pretty consistently enforced, *see, e.g., State v. Momah*, 167 Wn.2d 140, 153-55, 217 P.3d 321 (2009) (discussing application of the invited error doctrine), *cert. denied*, 131 S. Ct. 160 (2010), while

---

[19] I note that the *In re Davis* opinion also mischaracterizes the penalty phase process. Initially, *In re Davis* states that "the jury recommended that leniency not be granted." 152 Wn.2d at 662. But in an aggravated murder death penalty phase, the jury does not make a sentencing recommendation, it enters a finding to a specific question: " 'Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?' " RCW 10.95.060(4). If the jury answers "Yes," the trial court is required to impose a sentence of death. RCW 10.95.080(1). If it answers "No," the trial court is required to impose a sentence of life without possibility of parole. RCW 10.95.080(2).

the ineffective assistance of counsel argument has undermined normal preservation requirements and resulted in appellate courts reviewing the merits of issues never presented to or decided by the trial court. As such, in my opinion, the failure to propose or except to instructions has become either a tactical decision which cannot form the basis of an ineffective assistance of counsel claim, *see State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996) (legitimate trial tactics cannot form basis for ineffective assistance of counsel claim), or has become conduct so pervasive that the ordinary, reasonably prudent defense counsel intentionally fails to comply with court rules requiring issue preservation to provide what amounts to de novo review of the trial on appeal and, as the majority demonstrates, in a collateral proceeding. Accordingly, such conduct does not fall below that of the ordinary, reasonably prudent defense counsel and the first *Strickland* prong is not satisfied. 466 U.S. at 687-88.

¶66 Undeniably, the wholesale de novo review of a conviction on direct appeal via claims of ineffective assistance of counsel presents a challenge to the principle of finality of judgments. But in my opinion, the majority here has exceeded the reviewing authority granted an appellate court by reviewing *de novo* defense counsel's tactical jury instruction decisions raised for the first time in a collateral attack and construing the evidence in the light most favorable to Crace and against the validity of the mandated judgment and sentence. The law is clear. To prevail on a collateral attack of a mandated final judgment, Crace must prove he was "actually and substantially prejudiced by the [claimed constitutional] error." *In re Davis*, 152 Wn.2d at 671-72. The majority's analysis does not demonstrate that Crace has made such a showing and, accordingly, its ruling granting Crace's petition and vacating the mandated judgment exceeds the authority of this court.

¶67 Moreover, the majority's application of the direct review standard to a personal restraint petitioner's ineffective assistance of counsel claim undermines the purpose of

our limited PRP review standard, namely principles of finality of litigation, degradation of the prominence of trial, and deprivation of society's right to punish admitted offenders. *In re Davis*, 152 Wn.2d at 670. And rather than ensuring a defendant's right to effective assistance of counsel, the majority's mistaken application of the direct review standard to Crace's PRP acts as a disincentive for trial counsel to timely litigate issues at trial and preserve issues for appeal by complying with the appropriate court rules. Lowering the standard by which we grant collateral relief in a PRP results in degradation of the trial and direct review process. Accordingly, I respectfully dissent.

Review granted at 171 Wn.2d 1035 (2011).